**Jon WILSON, Petitioner–Appellant,**

v.

**Robert HOKE, Superintendent, Eastern New York Correctional Facility, Respondent–Appellee,**

**District Attorney of Monroe County, Intervenor.**

**No. 231, Docket 90–2497.**

United States Court of Appeals, Second Circuit.

Argued Sept. 26, 1991.

Decided Oct. 1, 1991.

Jane Simkin Smith, Millbrook, New York City, for petitioner-appellant.

Wendy Evans Lehmann, Asst. Dist. Atty., Rochester, N.Y. (Howard R. Relin, Dist. Atty., Monroe County, of counsel), for respondent-appellee and intervenor.

Before LUMBARD, WINTER and ALTIMARI, Circuit Judges.

WINTER, Circuit Judge:

In 1984, petitioner Jon Wilson was convicted of first degree manslaughter (N.Y.Penal Law § 125.20) for the stabbing death of a high school teacher on school premises. Appealing from Judge Telesca's dismissal of his petition for a writ of habeas corpus, Wilson argues that the Monroe County prosecutor discriminatorily exercised peremptory challenges against two black venirepersons in violation of the Equal Protection Clause of the Fourteenth Amendment. Petitioner bases his claim on *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). That decision came after Wilson's conviction but before his state appellate brief was filed. Because *Batson* applies retroactively to cases pending on direct appeal when *Batson* was decided, *see Griffith v. Kentucky*, 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987), it is the basis for Wilson's petition.

The voir dire for Wilson's trial was held from April 30 through May 3, 1984. It was not the practice in Monroe County at the time to have a stenographic recording of voir dire proceedings. Although defense counsel could have requested a transcription, he apparently chose not to do so. The only existing record pertinent to petitioner's claim is a colloquy between the trial judge and defense counsel just before the

trial began. That colloquy began with defense counsel seeking to inform the court of a recent pronouncement by the local district attorney indicating that prosecutors from his office were instructed to give reasons in open court whenever more than one member of a racial group became the subject of a peremptory challenge. The trial judge interrupted counsel, stating, "I am not bound by his statement." The judge then stated, "You noted your objection to the exercise of the peremptory of two black males." [1] Counsel responded, "With no reasons being given as announced." The colloquy then drifted into a discussion concerning the exercise of peremptory challenges to whites by the defense.

On the present record, we do not know how many venirepersons were examined, how many were peremptorily challenged on both sides, what type of questions were asked, or what answers were given by the challenged venirepersons. We know only that two black female venirepersons were the subject of peremptory challenges by the prosecution and that one unchallenged black venireperson sat on Wilson's petit jury. The trial judge died before Wilson's state appeal was heard.

The Appellate Division heard Wilson's appeal after the decision in *Griffith*. It affirmed his conviction, denying his *Batson* claim on the grounds that the existing record afforded no basis for an inference of a racial motive in the exercise of the peremptory challenges and that the record of the voir dire could not be reconstructed. We agree.

*Batson* noted the need for a "timely objection" to the exercise of peremptory challenges on a racial basis. *Batson*, 476 U.S. at 99, 106 S.Ct. at 1724; *see also Jones v. Butler*, 864 F.2d 348, 369 (5th Cir.1988) (on petition for rehearing) (contemporaneous objection a necessary predicate for raising *Batson* claim), *cert. denied*, 490 U.S. 1075, 109 S.Ct. 2090, 104 L.Ed.2d 653 (1989). As *Jones* noted, the finding of intentional discrimination " 'largely will turn on evaluation of credibility.' " *Jones*, 864 F.2d at 370 (footnote omitted) (quoting *Batson*, 476 U.S. at 98 n. 21, 106 S.Ct. at 1724 n. 21). A record of the nature of an objection is, therefore, necessary because "[y]ears after trial, the prosecutor cannot adequately reconstruct his reasons for striking a venireman." *Id.* at 370.

The record indicates that defense counsel never made a claim that was identifiable as being of the *Batson* genre. Defense counsel merely made an application to the court regarding the district attorney's policy of stating reasons for peremptory challenges to black venirepersons. Defense counsel was thus invoking the policy of the district attorney's office, not the Constitution. The claim was so understood by the trial judge, who indicated that the court was not bound by that policy.

Defense counsel thus made no attempt to establish a prima facie *Batson* case. He did not structure the claim as one raised by a member of a "cognizable racial group" in response to the prosecutor's challenging members of his race. He made no attempt to put on the record matters that *Batson* suggests might be relevant. He did not cite lines of questioning of venirepersons, argue that striking two of three black venirepersons was a sufficient pattern, or note other relevant circumstances. *Batson*, 476 U.S. at 97, 106 S.Ct. at 1723. Had he made such a prima facie case, the burden would have shifted to the prosecution to provide a race-neutral explanation for the peremptory challenges. The trial judge thus had no reason to recognize the claim as being in the nature of a *Batson* claim or, even if he did so recognize it, to find that a prima

---

1. By way of footnote, *see* Brief of Appellant at 6, n. 3, petitioner argues that four black venirepersons may have been subject to peremptory challenge, based on the trial judge's reference to "two black males." Because the defense objected to the seating of two black women, petitioner adds the "two black males" and concludes that four black venirepersons were challenged.

While agreeing that confusion exists, we decline to draw the proffered conclusion. The judge's statement is a description of an objection registered by defense counsel less than fifteen lines of transcript above, which is an objection to the challenge to two black females. He thus either misspoke or the transcript is in error.

facie case of discrimination requiring a response had been established.

Finally, petitioner argues that the case should be remanded for a hearing to supplement the record. While retroactive application of *Batson* has prompted courts to remand for further proceedings, *see, e.g., United States v. Horsley,* 864 F.2d 1543 (11th Cir.1989) (per curiam); *United States v. Davis,* 816 F.2d 433 (8th Cir.1987), a remand is not warranted in the instant case. For reasons stated in *Jones,* the burden was on petitioner to make a prima facie showing in support of his claim in the trial court. *See, e.g., United States v. Lane,* 866 F.2d 103, 107 (4th Cir.1989) (evidentiary hearing denied when defendant failed to make out prima facie case of intentional discrimination). As noted, he failed to carry that burden. Moreover, given the lack of a record of the voir dire, the death of the trial judge, and the passage of seven years, further proceedings would not shed reliable light upon the voir dire.

We note that petitioner seeks to introduce evidence that prosecutors in the particular district attorney's office were instructed in 1976 to strike minority venirepersons when the defendant was also a member of the minority group. Wilson's trial took place eight years later, and the seating of a black juror as well as the policy of the district attorney to give reasons for the use of peremptory challenges indicates that the evidence in question is stale and not relevant to the instant matter.

Affirmed.