George McCRORY, Petitioner,

v.

Robert J. HENDERSON, Superintendent, Auburn Correctional Facility; and Hon. Robert Abrams, Attorney General of the State of New York, Respondents.

No. 89–CV–456C.

United States District Court, W.D. New York.

Jan. 5, 1995.

**598**

Casey, Sanchez, Jones, Amigone & Kelleher (Thomas J. Casey, and Arthur G. Baumeister, of counsel), Buffalo, NY, for petitioner.

Kevin M. Dillon, Erie County Dist. Atty. (John J. DeFranks, and J. Michael Marion, of counsel), Buffalo, NY, for respondents.

## BACKGROUND

CURTIN, District Judge.

Petitioner George McCrory seeks a writ of habeas corpus on the grounds that he received ineffective assistance of counsel and that his right to a jury of his peers was violated by the prosecution's discriminatory use of peremptory challenges. Petitioner, an African–American, was found guilty of Sexual Abuse in the First Degree and Trespass in the Second Degree by an all-white jury on October 1, 1984. No stenographic record was made at the time of the voir dire, nor did McCrory's counsel object to seating or striking any of the venirepersons. On January 14, 1985, McCrory moved to vacate his conviction, alleging that the prosecutor improperly used his peremptory challenges to exclude three black members of the venire solely on the basis of race, in violation of the then-recent Second Circuit Court of Appeals decision, *McCray v. Abrams,* 750 F.2d 1113 (2d Cir.1984). New York State Supreme Court Justice Frederick Marshall denied McCrory's request for a evidentiary hearing and his motion to vacate without explanation. In 1987, the United States Supreme Court decided *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), and made a second ruling which made *Batson* retroactive. *Griffith v. Kentucky,* 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987). Petitioner renewed his motion and request for a hearing. Justice Marshall again denied the motion based on his prior determination that McCrory had not set forth a *prima facie* case of purposeful discrimination. Plaintiff's Ex. 3(D).

■ McCrory's subsequent efforts to obtain post-conviction relief for the alleged *Batson* violation are detailed in the Report and Recommendation ("R & R") issued by United States Magistrate Judge Leslie G. Foschio on July 8, 1992. Item 17. The Magistrate Judge properly found that petitioner had exhausted his state remedies and proceeded to analyze the merits of the petitioner's *Batson* claim. Under *Batson,* the defendant bears

the initial burden of demonstrating *prima facie* discrimination. Once this has been done, the prosecutor must then give racially neutral reasons for the peremptory challenges in question. The trial court then determines whether the defendant has met his ultimate burden of establishing purposeful discrimination. *U.S. v. Stavroulakis,* 952 F.2d 686, 695 (2d Cir.1992).

The Magistrate Judge reported that while McCrory, a member of a cognizable racial group, was able to establish that black venirepersons were excused by the prosecutor, "Petitioner could not articulate any other acts or other relevant circumstances, as required by *Batson,* to establish such a *prima facie* case." Item 17 at 27. The Magistrate Judge further determined that it would be inappropriate to hold an evidentiary hearing because "the lack of a record of the voir dire and the passage of almost eight years since the trial [made it] improbable that counsel or the venirepersons, if recalled, could remember, with a sufficient degree of clarity, any of the relevant circumstances surrounding the jury selection process in this case." *Id.* at 28. The Magistrate Judge concluded that the writ should be denied.

Petitioner then filed objections to the portion of the R & R which found that the petitioner had failed to make a *prima facie* case of discrimination as detailed in *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).[1] Petitioner contends that a *prima facie* case of impermissible discrimination has been established. The prosecutor exercised peremptory challenges to remove at least three of the four potential black jurors representing at least 75 percent of the total prospective black venirepersons. Petitioner argues that on the basis of this statistical analysis, an inference of impermissible discrimination is raised. *U.S. v. Alvarado (Alvarado II),* 923 F.2d 253, 256 (2d Cir. 1991) (A challenge rate much higher than the likely minority percentage of the venire strongly supports a *prima facie* case).

McCrory also states that at the time of the Magistrate Judge's consideration of the merits of his claim, the prosecution's jury selection notes were "not available for review and no contact had been made with any black venireperson on Petitioner's jury panel." Item 25 at 4. The petitioner did not explain why the notes were unavailable but insisted that their examination as well as testimony from the black venirepersons eliminated by peremptory challenge would bolster his claim of discrimination. He urged the court to hold an evidentiary hearing to include this additional information, especially since there is no record of the voir dire. He claims that an evidentiary hearing could determine whether the prosecutor used racially neutral reasons to remove the African–American venirepersons from the jury. In the alternative, if the passage of time has rendered an evidentiary hearing meaningless, McCrory requested that the court grant his writ.

The respondent urges the court to adopt the Magistrate Judge's recommendation that the writ be denied. Respondent disputes that *Alvarado II* held that evidence of a statistical disparity in the jury selection process is sufficient to make a *prima facie* case under the *Batson* test. Rather, *Alvarado II* determined that the disparity was a *factor* in a *prima facie* showing which was particularly important for that factual setting. Respondent also asserts that the trial court denied petitioner's original motions because they were entirely based on conclusory arguments and speculations. Since the trial judge was present during the voir dire, his finding should be treated with great deference. *Hernandez v. New York,* 500 U.S. 352, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991).

Finally, respondent objects to an examination of the prosecutor's jury selection notes at this late date, claiming first that the notes constitute privileged work product and second, that the notes have been extant for the entire period since petitioner's initial motion in state court, including the period when the habeas process began. Petitioner could have

---

1. Petitioner notes that while his objections deal exclusively with the Magistrate Judge's ruling on his *Batson* claim, he is not waiving or discontinuing his claim of ineffective assistance of counsel. However, the court has received no further objections to the Magistrate Judge's report and finds no reasons to disturb that portion of the R & R which discusses and rejects petitioner's claim of a Sixth Amendment violation of effective assistance of counsel.

sought their discovery immediately after his trial. Therefore, petitioner cannot now argue that the notes represent new evidence and should not be allowed to use them in his attempt to prove that the prosecutor used his peremptory challenges to exclude venirepersons solely on the basis of race.

After a review of the Magistrate Judge's R & R and consideration of the petitioner's objections and the State's response, this court made a preliminary finding based on the standard set by *Alvarado II* that petitioner had made out a *prima facie* case of discrimination. A limited evidentiary hearing was held on May 25, 1994, to permit the prosecutor, Christopher Belling, to explain his voir dire notes of McCrory's trial to the best of his recollection.

Mr. Belling's handwritten notes include information about the venireperson and his or her family regarding age, occupation or place of work, length of time at work, residence, number of children, schooling, and past experience with crime and the judicial system. They also indicate which party excused the venireperson, but offer no reason for the elimination. There is nothing in the notations which indicates the race of the person.

At the hearing, Belling was able to decipher his notes in great detail but stated that he no longer had any independent memory of the voir dire proceeding nor of the people questioned. Indeed, he could not remember with any certainty which of the struck venirepersons were African–Americans. He stated that at the present time, he could not reconstruct the reason for the challenges from the notes. T. 60.

Mr. Belling did testify to his general preferences in selecting jury members. He stated that he favored people who were employed and showed stability by living in a certain place for several years. Level of education did not matter as much as his impression of the way they thought. He makes his decisions after interacting with the potential juror and listening to his or her answers to everybody's questions. He did say that his present recollection was that race did not enter into his exercise of peremptory challenges. T. 58. He also testified that he had never used race as one of the

criteria in selecting a juror, but upon cross-examination, admitted that he might favor blacks persons on a jury for a "black-on-black" crime. T. 68–69.

Counsel for the petitioner pointed out in his memorandum and again at the hearing that the notes reflect street addresses only for the black venirepersons. The only streets recorded—Reed Street, Florence Street (which petitioner believes is actually Florida Street) and Fillmore Avenue—are all predominantly populated by African–Americans. Thus, if the prosecutor noted these streets and struck venirepersons because they lived there, by inference race would have been an important consideration in the decision. Petitioner argues that the notation of the street address is especially important, in that the potential black jurors struck did not have any other noted characteristics which differentiated them from their white counterparts. Moreover, the prosecutor has offered no neutral reason for his peremptory challenges. Item 25 at 9–11. Petitioner also argued that the affidavit Belling offered in response to McCrory's post-trial motion denied that there was any racial motivation in making the selection, but gave no other explanation for the fact that the black venirepersons were excluded. Item 40 at 78.

Respondent, without conceding that the notes should be admitted into evidence, argues that the prosecutor's testimony and the notes themselves belie petitioner's assertion of discrimination, since there is nothing to indicate the race of the venireperson questioned. Respondent points out that since the voir dire occurred prior to *Batson,* the prosecutor did not anticipate that he would need to explain his peremptory challenges nor show the notes to anyone. Nevertheless, he made the same careful notes about each venireperson, recording similar information about each. Respondent claims that the notes indicate that the prosecutor seriously considered the qualifications of each juror as an individual. Item 27 at 20–24.

Counsel for respondent also claims that the petitioner failed to make an adequate record on which to premise his *prima facie* case. He elicited from his witness that

McCrory did not request a record of the voir dire and made no contemporaneous objection to empaneling an all-white jury. The petitioner never affirmatively established which of the struck venirepersons were black, nor did he provide the total number of African–Americans on the jury panel. In response, petitioner's counsel during the hearing referred the court to the trial court proceedings in which petitioner's appellate counsel requested an evidentiary hearing. The trial court denied the request on two separate occasions.

## DISCUSSION

### I. Prosecution's Voir Dire Notes

■ As a threshold issue, the respondent maintains that the petitioner should not be permitted to rely on the notes taken by the prosecutor during the voir dire to bolster a showing of a *prima facie* case. Respondent asserts that the notes have been available to McCrory and his counsel since the end of trial. It would be unfair to include them at this late stage in a determination of the racial nature of the peremptory challenges.

Petitioner's counsel states by affidavit that the notes were not available to him for review prior to the Magistrate Judge's ruling, but does not explain why they were unavailable. Item 25 at 4. There is no indication that this unavailability occurred due to any action or omission by the respondent.

The court was given a copy of the notes in question and decided to hold a limited evidentiary hearing to allow the prosecutor to interpret their meaning. I agree that it seems unfair to the respondent to permit McCrory to use the notes to meet his burden to demonstrate a *prima facie* case, especially because the petitioner does not explain his failure to discover the notes at an earlier point in these proceedings. However, since I find that the petitioner has met his burden without reliance on the notes, it is proper to permit respondent to submit its own notes if they can aid in a reconstruction of the voir dire process.

### II. Prima Facie Case

■ The Magistrate Judge found that the petitioner had failed to establish a *prima facie* case as required by *Batson*. In order to meet this initial burden, the petitioner "must show that he is a member of a cognizable racial group, and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race." 476 U.S. at 80, 106 S.Ct. at 1713. There is no dispute that petitioner is black and was tried before an all-white jury after the prosecutor used peremptory challenges to excuse at least three of the four black venirepersons questioned during voir dire. Second, petitioner may rely on the fact that "peremptory challenges constitute a jury selection practice that permits 'those to discriminate who are of a mind to discriminate.'" *Id.* at 96, 106 S.Ct. at 1723. Third, the petitioner must show "that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race." *Id.*

Under ordinary circumstances, *Batson* objections should be entertained and adjudicated during the process of jury selection. *U.S. v. Biaggi*, 909 F.2d 662, 679 (2d Cir.1990), *cert. denied*, 499 U.S. 904, 111 S.Ct. 1102, 113 L.Ed.2d 213 (1991). However, in this case, the jury selection and trial occurred before *Batson* was decided. The trial judge and the litigants had no crystal ball available to predict what would constitute an adequate record. Counsel for the petitioner made no contemporaneous objection to the voir dire or the empaneling of the jury, and no record of these proceedings was preserved. When petitioner made post-trial motions to vacate the judgment based on newly decided authority, the trial judge neither permitted an evidentiary hearing at which the parties could establish with particularity the reasons why the minority venirepersons were excused nor stated on the record his own impressions of the fairness of the jury selection process. Indeed, the trial judge explicitly stated that he had no recollection of the selection of the jury for McCrory's trial. Thus, the retroactive application of *Batson* puts this court in the daunting position of deciding a *Batson*

claim on a sparse record ten years after the fact, through no fault of anyone involved.

■ The respondent argues that the petitioner has failed to meet his burden of demonstrating a *prima facie* case because of these shortfalls in the record. In particular, respondent states that McCrory has not established the third element of the *prima facie* case under *Batson* because he failed to make contemporaneous objections during or just after the seating of the jury, did not produce a record of the voir dire proceedings, and has shown no other facts from which to infer a discriminatory use of peremptory challenges other than the fact that at least three of four black venirepersons were stricken from the panel. No evidence was offered to establish the identity of the excluded jurors, the questions they were asked, or the answers they gave during voir dire, other than the statement that they could all be fair and impartial in trying the case. Item 27 at 11–12.

The Magistrate Judge agreed with the respondent, basing his finding on the analysis in *Wilson v. Hoke*, 945 F.2d 1250 (2d Cir. 1991), which was decided by the Second Circuit several months after *Alvarado II*. The defendant-petitioner in *Wilson* did not preserve any record of the voir dire. There was no indication of what questions were asked, how many venirepersons were examined, or how many peremptory challenges were made. The only evidence presented was that two black females were subject to peremptory challenge by the prosecution. The *Wilson* court determined that the petitioner had failed to set forth a *prima facie* case with this paltry showing and that no benefit could accrue from an evidentiary hearing after so many years. The Magistrate Judge found McCrory's petition analogous to *Wilson*'s, determining that McCrory had not articulated any other facts or other relevant circumstances besides the statistical disparity and describing McCrory's arguments as to why the prosecutor excused the prospective venirepersons as conclusory and speculative. Item 17 at 27–28.

While it is true that the petitioner did not state with specificity in his post-trial motion papers what led him to believe that some or all of the black venirepersons struck by the prosecutor were excused solely because of their race, he did point out that at least 75 percent of the minority venirepersons were peremptorily challenged by the prosecutor, with the result that petitioner was tried by an all-white jury. Petitioner further asserted that there was nothing in the responses of the stricken panel members to indicate that they, unlike those left in the jury box, could not serve as fair and impartial jurors. Petitioner twice requested and was denied an evidentiary hearing at which these claims could be investigated.

Petitioner urges the court to find that the statistical evidence he presents suffices for a *prima facie* showing. In *Alvarado II*, the Court of Appeals for the Second Circuit found that a *prima facie* case of discrimination had been established despite the fact that there was "no indication that any of the prosecution's 'questions and statements during voir dire' ... revealed evidence of discriminatory intent." 923 F.2d at 255, citing *Batson*, 476 U.S. at 97, 106 S.Ct. at 1723. The court noted that "a rate of minority challenges significantly higher than the minority percentage of the venire" would support a statistical inference of discrimination.... We think a challenge rate nearly twice the likely minority percentage of the venire strongly supports a *prima facie* case under Batson. 923 F.2d at 255–56. Despite the respondent's attempt to limit *Alvarado II* to its unusual facts and procedural history, at least one other district court has found the analysis controlling. *See U.S. v. Santopietro*, 809 F.Supp. 1016, 1019 (D.Conn.1992); *see also Jones v. Ryan*, 987 F.2d 960, 971 (3d Cir.1993) (*Prima facie* case made when 75 percent of black venirepersons called for voir dire were removed and petitioner raised inference that the prosecutor used certain of his peremptory challenges in a discriminatory fashion); *cf. United States v. Lewis*, 892 F.2d 735, 736 (8th Cir.1989) (Reliance on percentages alone does not make out a *prima facie* case).

It is a close call, but the court finds that the facts at bar are more similar to those in *Alvarado II* than those of *Wilson*. Unlike *Wilson*, McCrory provided the trial court

with the total number of black venirepersons questioned and removed by the prosecution. He specifically alleged that the prosecution had used its peremptory challenges in a systematic, discriminatory fashion and not on the basis of their personal history or behavior during the voir dire. Although petitioner's counsel did not make a timely objection to seating the jury, he did file a post-trial motion to vacate promptly after *McCray* and again after *Batson* was decided. In both instances, he was denied an evidentiary hearing, at which he could have completed the record regarding the content of the voir dire of the venirepersons to bolster his claim that nothing in their responses or demeanor made them unsuitable jurors.

The fact that the petitioner failed to preserve a record of the voir dire and made no showing that the questions and answers indicate bias by the prosecution is not dispositive. *Alvarado II* placed no reliance on the voir dire, and the statistical disparity which the Second Circuit found sufficient for a *prima facie* case is not as great as it is here. Significantly, the *Wilson* court had no knowledge of the total number of minority members of the jury panel nor of the final composition of the jury to indicate whether any pattern of strikes occurred. In this case, systematic exclusion of black jurors was both specifically alleged and readily inferred from the numbers offered.

■ Finally, the respondent argues that because the trial judge in this case supervised the voir dire, his determination that the prosecutor did not use racial bias in exercising peremptory challenges is entitled to great deference by a reviewing court. Item 27 at 14–15. *See also Hernandez v. New York*, 500 U.S. 352, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991). However, when Justice Marshall was first presented with the motion, he explicitly stated that he had no recollection of the jury panel or the voir dire process. Transcript, Argument on Motion to Vacate Judgment, January 14, 1985, at p. 25. Thus, his decision to deny the motion without holding a hearing could not have rested on his own observations of the voir dire process and provides no basis for this court to defer to a factual determination.

## III. Prosecution's Reasons for Peremptory Challenges

■ Once the petitioner establishes a *prima facie* case, the burden shifts to the prosecution to provide race-neutral reasons for the peremptory challenges of black potential jurors. "A neutral explanation ... means an explanation based on something other than the race of the juror. At this step of the inquiry, the issue is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral." *Hernandez*, 500 U.S. at 360, 111 S.Ct. at 1866.

The passage of time in this case has made it equally difficult for the prosecution to meet its burden. In response to McCrory's motions to vacate, the prosecutor denied exercising any peremptory challenges based solely on the race of the prospective juror but never explained why he asked that the black venire members be excused. After ten years and countless criminal trials, the prosecutor has no independent recollection of any of the jurors, the voir dire, or his reasons for the challenges he made at McCrory's trial. Item 40 at 25. He does have his notes, but ultimately, they could not provide the inferences necessary to rebut the *prima facie* challenge. The prosecutor frankly admitted at the hearing that the notes were insufficient to help him reconstruct the reasons for striking particular jurors. "That a lawyer would forget why he or she had struck particular jurors years earlier is not surprising, especially when the then-controlling law required no reasons. Nonetheless, when an attorney offered virtually nothing beyond 'I do not remember,' ... the striking party [has] failed to carry its burden." *Polk v. Dixie Ins. Co.*, 972 F.2d 83 (5th Cir.1992) (citation omitted).

However, the prosecution is entitled to rely on circumstantial evidence to counter a *prima facie* showing when a *Batson* analysis is only applied post-conviction. *See Johnson v. Love*, 40 F.3d 658, 666 (3d Cir.1994); *Alvarado II*, 923 F.2d at 256. In *United States v. Nicholson*, 885 F.2d 481 (8th Cir.1989), noted with approval in *Brown v. Kelly*, 973 F.2d 116 (2d Cir.1992), *cert. denied*, —— U.S. ——,

113 S.Ct. 1060, 122 L.Ed.2d 366 (1993), the court permitted a prosecutor who could not recall specific reasons for exercising peremptory challenges of particular venirepersons to present a standard set of guidelines by which he generally evaluated potential jurors. The prosecutor stated that he preferred older, married persons with long histories of employment who offered information during voir dire. He then compared those guidelines to the black venire members he excused, noting that each of the three was either single, divorced, or separated. Additionally, one shared the same occupation as the defendant, another had a relative in prison, and the third was involved in a legal action against a federal agency. The *Nicholson* court found the prosecutor's guidelines to be race-neutral and the comparison of those guidelines to the profiles of the challenged venirepersons sufficiently specific to meet *Batson* requirements. 885 F.2d at 483–84.

Mr. Belling testified at the hearing that he preferred jurors who were employed and had resided in one location for several years. A review of his voir dire notes indicated no significant differences in lengths of employment or terms of residence between the black venire members stricken from the jury and the white jurors empaneled, although Belling did venture an opinion that he may have struck one juror due to her occupation and place of employment. Belling further testified that the level of education did not matter as much as his impression of the way they thought. He makes his decisions after interacting with the potential juror and listening to his or her answers to everybody's questions. Item 40 at 17. However, he was completely unable to remember, even with the aid of his notes, whether the responses or demeanor of the excused jurors contributed to his decision to challenge them.

Respondent claims that the voir dire notes indicate that the prosecutor seriously considered the qualifications of each juror as an individual. There are no references regarding the race of the venirepersons interrogated. The respondent argues that because the trial was held prior to *Batson*, the prosecutor would have no reason not to include race in his personal notes if it figured in his determination of whom to challenge. Therefore, the fact that the prosecutor made no such references should lead the court to infer the absence of racial bias in process of selection. Item 27 at 20–24.

The petitioner counters this assertion by pointing out that the prosecutor noted down street names of residences for black, but not white, potential jurors. All the streets listed in the notes are located in predominantly black neighborhoods within the city of Buffalo. The petitioner maintains that the court can infer that the prosecutor found residence in black neighborhoods noteworthy and included it in his consideration of peremptory challenges. Item 25 at 9–10. At the evidentiary hearing, Mr. Belling testified that the judge asked the majority of the questions during the voir dire. Item 40 at 5. He maintained that he never asks people what street they live on and surmised that he wrote down street addresses for certain individuals based on their responses to other questions. *Id.* at 33–34. He also pointed out that at least one of the street noted was in a "changing" neighborhood at the time of the trial. *Id.* at 35.

The petitioner also finds evidence of racial consideration in Belling's assertion in a response affidavit to the motion to vacate that "it has been your deponent's experience that in many cases black jurors are preferable when dealing with a 'black on black' 'crime.'" Plaintiff's Ex. 2. Respondent counters that there is nothing impermissible about this particular kind of evaluation of juries.

The scant additional evidence submitted at the hearing did not result in a preponderant showing for either party. While an inference of differential treatment could be taken from listing street names solely of the black venire members, the inference is diminished by Belling's testimony that he never asks for street names and could not remember why they were offered by certain potential jurors. Belling did provide a possible explanation for excusing one black woman but was unable to testify that this was the reason why he challenged her. In all other respects, Belling's testimony regarding the notes failed to explain the challenges he made. Although the

petitioner is correct in asserting that a preference for black jurors for a "black on black" crime might constitute a use of racial criteria for jury selection, the argument does not aid a determination of intent here since, if anything, the prosecutor failed to follow his stated preference.

Thus, the court is left with a possible race-neutral explanation for one black venireperson and no explanations for at least two others. In *Harrison v. Ryan*, 909 F.2d 84 (3rd Cir.), *cert. denied*, 498 U.S. 1003, 111 S.Ct. 568, 112 L.Ed.2d 574 (1990), the court was similarly confronted with a prosecutor who was unable to recall any reason for excusing one of the black members of the jury panel. The court concluded that a new trial was necessary, finding that:

> [T]he prosecutor's failure to recall his reason for using a peremptory challenge to strike the juror was insufficient to satisfy the Batson requirement that the "prosecutor ... must articulate a neutral explanation related to the particular case to be tried" [*quoting Batson* 476 U.S. at 98, 106 S.Ct. at 1724]. It is certainly not surprising that the prosecutor could not recall his reason given the length of time which passed between jury selection and the Batson hearing.... Certain other factors, however, most notably the interests of justice, require retroactive application of Batson for cases on direct review even where a long period of time occurs in the state court appellate process....
>
> [T]he exclusion of one black juror from the jury on the basis of race is sufficient to require a new trial pursuant to *Batson.*

*Id.* at 87–88, 106 S.Ct. at 1718–19.

### CONCLUSION

Petitioner George McCrory has succeeded in establishing a *prima facie* case of the discriminatory use of peremptory challenges to prevent black venire members from serving as jurors at his trial. The respondent was unable to rebut this *prima facie* showing, failing to demonstrate by a preponderance of the evidence that the prosecution employed race-neutral reasons for excluding prospective jurors. Accordingly, the writ must be granted, and the petitioner must be

granted a new trial or be released. If the passage of time has rendered a new trial impossible, then the petitioner must be released from confinement.

A new trial must be afforded to petitioner not later than March 1, 1995. If a new trial is not granted to petitioner before that date, he shall be released from custody.

So ordered.