George McCRORY, Petitioner–Appellee,

v.

Robert J. HENDERSON, Superintendent, Auburn Correctional Facility, Hon. Robert Abrams, Attorney General of the State of New York, Respondents–Appellants.

No. 192, Docket 95–2036.

United States Court of Appeals, Second Circuit.

Argued Sept. 6, 1995.

Decided May 1, 1996.

---

J. Michael Marion, Assistant District Attorney, Buffalo, N.Y. (Kevin M. Dillon, District Attorney for Erie County and John J. DeFranks, Counsel of Record, Buffalo, N.Y., on the brief), for Respondents–Appellants.

Arthur G. Baumeister, Jr., Andrews, Sanchez, Amigoe, Kelleher, Mattrey & Marshall, Buffalo, N.Y., for Petitioner-Appellee.

Before: FEINBERG, KEARSE, and LEVAL, Circuit Judges.

LEVAL, Circuit Judge:

This appeal raises the issue whether an objection to the use of peremptory challenges under *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), is timely if not made until after the conclusion of jury selection. We hold that it is not.

Petitioner George McCrory was convicted after a jury trial in New York State court. McCrory, who is African–American, first objected to the prosecutor's use of his peremptory challenges to strike black venirepersons three and a half months after jury selection and more than three months after trial. The New York State courts found no constitutional violation. On McCrory's petition for a writ of habeas corpus to the United States District Court for the Western District of New York, Judge John T. Curtin held that McCrory had put forth a prima facie case of intentional discrimination under *Batson*. Thus, despite the fact that McCrory did not raise his objection during jury selection or even during his trial, the district court shifted the burden of going forward to the prosecutor to put forth race-neutral explanations for his challenges. As the prosecutor had no memory of a jury selection which occurred almost ten years earlier, he was unable to explain his challenges. The district court

granted McCrory's petition and ordered the State to either retry him or release him. The State appeals.

We hold that the failure to object to an adversary's use of peremptory challenges until after the completion of jury selection waives the right to do so. We therefore reverse the judgment of the district court and reinstate McCrory's conviction.

## Background

McCrory was tried before a jury in New York State Supreme Court, Erie County. Jury selection occurred on September 24, 1984. On October 1, 1984, the jury found McCrory guilty of sexual abuse in the first degree and criminal trespass in the second degree. Because of his several previous robbery convictions, he was sentenced as a persistent violent felony offender to a term of fifteen years to life. McCrory made no objection at trial to the prosecutor's use of his peremptory challenges.

On January 11, 1985, McCrory first protested the prosecutor's use of peremptory challenges to strike black jurors. Citing our then-recent decision in *McCray v. Abrams*, 750 F.2d 1113 (2d Cir.1984), *vacated for reconsideration in light of Batson*, 478 U.S. 1001, 106 S.Ct. 3289, 92 L.Ed.2d 705 (1986), McCrory moved in state court to vacate his conviction, asserting that the prosecutor's use of peremptory challenges violated his Sixth Amendment right to a trial by an impartial jury representing a cross section of the community.

Because no party had requested that the voir dire be recorded and McCrory made no contemporaneous objection, the facts surrounding the jury selection were (and remain) unclear. The showing made by McCrory in support of his motion was extremely vague. In an affidavit, McCrory asserted that "approximately four Black venirepersons were called to the jury box for examination. To the best of my recollection, approximately three of the Black venirepersons were found satisfactory to [the defendant]...." The affidavit went on to state

that the prosecutor struck the black jurors who were satisfactory to McCrory, and did so solely because of their race. McCrory did not identify the "approximately four" black jurors nor the "approximately three" who were challenged by the prosecutor.

McCrory also failed to submit an affidavit from the attorney who represented him during jury selection. He did submit an affidavit "upon information and belief" of his new attorney, Lester G. Sconiers, which alleged,

the Defendant was tried before an all White middle aged jury [comprised] of seven females and five males. Upon information and belief, four Black venirepersons were called to the jury box during the jury selection process. It is further [believed] that the Assistant District Attorney systematically excluded Black jurors solely on the basis of their racial affiliation through an impermissible use of the peremptory challenge.

The prosecutor, Christopher J. Belling, submitted an affidavit in opposition to McCrory's motion. He acknowledged that the jury at McCrory's trial was all white, but denied that he had "exercis[ed] any peremptory challenges based solely on the race of the prospective venireperson." The prosecutor stated that although he had kept his notes from the jury selection, they did not reflect how many black venirepersons were called. He also called to the court's attention McCrory's implicit acknowledgement in his affidavit that the prosecutor had not challenged all the black jurors called.[1] (According to McCrory's affidavit not all the black jurors were satisfactory to him.)

Justice Frederick M. Marshall, who presided over McCrory's trial, denied McCrory's motion to vacate. McCrory filed a timely notice of appeal to the Appellate Division of the New York State Supreme Court. On April 30, 1986, while his appeal was pending, the United States Supreme Court decided *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). *Batson* applies retroactively to cases, like McCrory's, that were pending on direct appeal at the time *Batson* was decided. *Grif-*

---

1. Belling's affidavit also pointed out that Sconiers' information-and-belief assertions about the demographics of the trial jury were inaccurate in various respects not relevant to this appeal.

*fith v. Kentucky,* 479 U.S. 314, 326–28, 107 S.Ct. 708, 715–16, 93 L.Ed.2d 649 (1987).

On October 30, 1986, six months after the *Batson* decision, McCrory renewed his motion in state court to vacate his conviction. Justice Marshall again denied the motion, reasoning that *Batson* "requires the defendant to develop a record setting forth a *prima facie* case of purposeful racial discrimination in selection of his petit jury.... No record of systematic exclusion of blacks from the jury venire was developed in the instant case, as this court previously ruled."

McCrory's conviction was affirmed, without opinion, by the Appellate Division, and the Court of Appeals denied leave to appeal.

In 1989, McCrory filed this petition for a writ of habeas corpus. The petition was referred to United States Magistrate Judge Leslie G. Foschio. Finding that McCrory failed to establish a prima facie case, Magistrate Judge Foschio recommended that the petition be denied. The magistrate judge found that although McCrory did establish that he was a member of a cognizable racial group and that the prosecutor excluded black venirepersons, "Petitioner could not articulate any other facts or other relevant circumstances, as required by *Batson*, to establish ... a *prima facie* case." The magistrate judge concluded that it would be inappropriate to hold an evidentiary hearing because "[g]iven the lack of a record of the voir dire and the passage of almost eight years since the trial, it is improbable that counsel or the venirepersons, if recalled, could remember, with a sufficient degree of clarity, any of the relevant circumstances surrounding the jury selection process in this case."

On review of the magistrate judge's report and recommendation, Judge Curtin made a preliminary assessment that McCrory had established a prima facie case and ordered an evidentiary hearing for the prosecutor to come forward with race-neutral reasons for his peremptory challenges to black jurors. At the hearing, which was held on May 25, 1994, nearly ten years after the trial, the prosecutor testified that he had no recollection of the race of any of the challenged jurors or of the reasons for any of his challenges; that at the time of his initial affidavit four months after the jury selection, he had had no such recollection; and that his jury selection notes did not reflect the races of any of the prospective jurors or the reasons for his challenges. Accordingly, he could proffer no reasons for his challenges.

 Deeming it a "close call," Judge Curtin found that, although McCrory had offered no evidence "to establish the identity of the excluded jurors, the questions they were asked, or the answers they gave during voir dire,"[2] McCrory had nonetheless established a prima facie case. Judge Curtin ruled that this shifted the burden to the prosecution to prove by a preponderance of the evidence race-neutral reasons for its challenges.[3] Because the prosecutor was unable to provide reasons, the district court granted the writ.

*Discussion*

I. *Is a Batson Challenge Timely If Raised For The First Time After The Completion Of Jury Selection?*

Because McCrory did not raise his objection to the prosecutor's use of his perempto-

---

**2.** In an attorney's affidavit submitted in opposition to the magistrate judge's report and recommendation, McCrory, for the first time, purported to identify the African–American venirepersons that were struck by the prosecutor. McCrory based his allegations on addresses reflected in the prosecutor's jury selection notes and his attorney's belief that certain streets were in "predominantly black" neighborhoods. However, because McCrory had known of the existence of the prosecutor's notes for almost eight years and had never previously requested them, Judge Curtin found it unfair to the prosecutor to obligate him to defend against inferences drawn from his notes, and disallowed this evidence.

**3.** We note that the district court misapplied *Batson* as to the burden of proof. The court stated that the shifted burden required the prosecutor "to demonstrate by a preponderance of the evidence that the prosecution employed race-neutral reasons for excluding prospective jurors." *Batson* does not go so far. Under *Batson*, the burden that shifts to the prosecution is only the burden of going forward by providing an explanation. *Batson*, 476 U.S. at 97, 106 S.Ct. at 1723 ("[T]he burden shifts to the State to come forward with a neutral explanation...."). However, "the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike." *Purkett v. Elem,* —— U.S. ——, ——, 115 S.Ct. 1769, 1771, 131 L.Ed.2d 834 (1995).

ry challenges until long after trial, we face the question whether a *Batson* objection raised for the first time after the conclusion of jury selection is timely.

In *Batson*, the Supreme Court ruled that a criminal defendant's rights under the Equal Protection Clause are violated if the prosecutor uses peremptory challenges to strike jurors on account of their race. *Batson*, 476 U.S. at 89, 106 S.Ct. at 1719. The Supreme Court made clear that in order to claim the rights specified in *Batson*, the defendant must object in "timely" fashion. *Id.* at 99, 106 S.Ct. at 1724.

We recognize that the Court has never defined timeliness for a *Batson* claim.[4] The Court's discussion in *Batson*, however, makes clear that it envisioned an objection raised during the jury selection process. The Court stated that it would leave it to trial courts to determine "whether it is more appropriate ... upon a finding of discrimination ... to discharge the venire and select a new jury from a panel not previously associated with the case ... *or to disallow the discriminatory challenges and resume selection with the improperly challenged jurors reinstated on the venire.*" *Batson*, 476 U.S. at 99 n. 24, 106 S.Ct. at 1725 n. 24 (emphasis added) (citations omitted). Obviously, the latter option would not exist once the jury had been sworn and the evidentiary trial had started. *See Jones v. Butler*, 864 F.2d 348, 370 (5th Cir.1988)(on petition for rehearing)("The Supreme Court's analysis in *Batson* presumed that an objection would be made promptly, probably before the venire was dismissed."), *cert. denied*, 490 U.S. 1075, 109 S.Ct. 2090, 104 L.Ed.2d 653 (1989).

In addition to this language in *Batson*, there are strong arguments in favor of requiring that a *Batson* objection be raised before the completion of jury selection. If the objection is raised during jury selection, the error is remediable in any one of a number of ways. Challenges found to be abusive might be disallowed; if this is not feasible because the challenged jurors have already been released, additional jurors might be called to the venire and additional challenges granted to the defendant; or in cases where those remedies are insufficient, the jury selection might begin anew with a fresh panel. *See Batson*, 476 U.S. at 99 n. 24, 106 S.Ct. at 1725 n. 24. If, on the other hand, a *Batson* objection may be raised after the jury has been sworn and trial has begun, there can be no remedy short of aborting the trial. This would permit the defendant to manipulate the system to the extreme prejudice of the prosecution and give the defendant a strong inducement to delay raising the objection until trial is underway. As the trial judge is unlikely for reasons of judicial economy to abort the trial, the defendant may have the opportunity to test his fortunes with the first jury, preserving the opportunity for a mistrial and a second round in the event of a conviction. *See United States v. Dobynes*, 905 F.2d 1192, 1196–97 (8th Cir.)(holding that *Batson* challenge raised for the first time after trial was untimely in part because only remedy after trial is vacating the conviction), *cert. denied*, 498 U.S. 877, 111 S.Ct. 206, 112 L.Ed.2d 167 (1990); *United States v. Forbes*, 816 F.2d 1006, 1011 (5th Cir.1987) ("The 'timely objection' rule is designed to prevent defendants from 'sandbagging' the prosecution by waiting until trial has concluded unsatisfactorily before insisting on an explanation for jury strikes that by then the prosecutor may largely have forgotten.").

■ Furthermore, the nature of the peremptory challenge mandates that any objection to its use be raised and ruled upon promptly. *See Jones*, 864 F.2d at 369. "The decision to exercise a peremptory challenge, in contrast to a challenge for cause, is subjective; and, often, the reasons behind that decision cannot be easily articulated." *Thomas v. Moore*, 866 F.2d 803, 805 (5th Cir.), *cert. denied*, 493 U.S. 840, 110 S.Ct. 124, 107 L.Ed.2d 85 (1989). Such decisions may legitimately be based not only on an-

---

4. Indeed, in *Ford v. Georgia*, 498 U.S. 411, 423, 111 S.Ct. 850, 857, 112 L.Ed.2d 935 (1991), the Court found that states retain considerable discretion to fashion their own rules governing timeliness. *Id.* ("[A] state court may adopt a general rule that a *Batson* claim is untimely if it is raised for the first time on appeal, or after the jury is sworn, or before its members are selected.").

swers given by the prospective juror to questions posed on voir dire, but also on the prosecutor's observations of the prospective juror. "An impression of the conduct and demeanor of a prospective juror during the *voir dire* may provide a legitimate basis for the exercise of a peremptory challenge." *Brown v. Kelly*, 973 F.2d 116, 121 (2d Cir. 1992), *cert. denied*, 506 U.S. 1084, 113 S.Ct. 1060, 122 L.Ed.2d 366 (1993). Thus, a prosecutor's explanation that a venireperson was excluded because he or she seemed, for example, inattentive or hostile to the government, if credible, is sufficient. *See, e.g., United States v. Sherrills*, 929 F.2d 393, 395 (8th Cir.1991)(juror inattentiveness may be valid race-neutral reason); *Barfield v. Orange County*, 911 F.2d 644, 648 (11th Cir.1990)(hostile facial expressions can provide legally sufficient basis for use of peremptory challenge), *cert. denied*, 500 U.S. 954, 111 S.Ct. 2263, 114 L.Ed.2d 715 (1991); *Forbes*, 816 F.2d at 1010–11 (finding that prosecutor's use of peremptory challenge to excuse black juror because "[h]e sensed by her posture and demeanor that she was hostile to being in court" was not based on race). Because challenges are often based on such subtle, intangible impressions, the reasons for exercising the challenges may be quite difficult to remember if an objection is not raised promptly.

Furthermore, the trial judge must rule on whether the proffered justifications for the challenges are bona fide or are a subterfuge for discrimination. *See Brown*, 973 F.2d at 121 (finding that "a prosecutor's reason for discharge bottomed on demeanor evidence deserves particularly careful scrutiny" because such "rationalizations are susceptible to abuse"); *Sherrills*, 929 F.2d at 395. Given the often subtle reasons for the exercise of peremptory challenges, a court's determination of whether a prosecutor has used them in a discriminatory fashion will often turn on the judge's observations of prospective jurors and the attorneys during voir dire and an assessment of their credibility. *See Wilson v. Hoke*, 945 F.2d 1250, 1251 (2d Cir. 1991)("the finding of intentional discrimination 'largely will turn on evaluation of credi-

bility'" (quoting *Batson*, 476 U.S. at 98 n. 21, 106 S.Ct. at 1724 n. 21)(internal quotations omitted)); *Jones*, 864 F.2d at 369–70. It is nearly impossible for the judge to rule on such objections intelligently unless the challenged juror either is still before the court or was very recently observed. *See Wilkerson v. Collins*, 950 F.2d 1054, 1063 (5th Cir. 1992)("The inquiry is essentially one of fact, dependent on credibility, and the passage of time would diminish the prosecutor's reconstruction of his reasons for striking a venireperson and the judge's evaluation of the juror." (citations omitted)), *cert. denied*, 509 U.S. 921, 113 S.Ct. 3035, 125 L.Ed.2d 722 (1993).

In view of the problems caused by tardy *Batson* challenges, the Third and Fifth Circuits have held that a defendant who fails to object to the prosecutor's use of peremptory challenges during jury selection waives the right to assert a *Batson* claim. *Jones*, 864 F.2d at 369–70; *Government of the Virgin Islands v. Forte*, 806 F.2d 73, 75–76 (3rd Cir.1986)(holding that defendant "waived his objection to the prosecutor's use of her peremptory challenges by failing to make a contemporaneous objection during jury selection"), *denial of post conviction relief vacated by*, 865 F.2d 59 (3rd Cir.1989). Noting that "[t]he Supreme Court's analysis in *Batson* presumed that an objection would be made promptly, probably before the venire was dismissed," *Jones*, 864 F.2d at 370, the Fifth Circuit held that "a contemporaneous objection to the use of peremptory challenges to exclude jurors on the basis of race is a necessary predicate to later raising a *Batson* claim. The nature of the claim requires that it be raised when the strikes are made." *Id.* at 369.

In addition, the Eighth Circuit has expressed support for a rule requiring that *Batson* challenges be raised during jury selection. In *United States v. Dobynes*, 905 F.2d at 1196–97, the Eighth Circuit held that a defendant who raised a *Batson* claim for the first time one week after the conclusion of his trial, had forfeited the objection.[5] Al-

---

5. The Tenth Circuit has also stated that the failure to raise a *Batson* claim in the trial court waives the objection. *Sledd v. McKune*, 71 F.3d 797, 799 (10th Cir.1995).

though, the Court did not need to reach the issue of whether a *Batson* objection raised for the first time after jury selection could be considered timely, it nonetheless noted that "[i]t is certainly preferable that the objection be made prior to dismissal of the venire. . . ." *Id.* at 1196.

Three state supreme courts which held, prior to *Batson,* that a prosecutor's use of peremptory challenges on the basis of race violated provisions of their state constitutions all appear to have recognized that such an objection must be raised during jury selection when it can easily be remedied. *See State v. Neil,* 457 So.2d 481, 486 & n. 9 (Fla.1984); *Commonwealth v. Soares,* 377 Mass. 461, 491, 387 N.E.2d 499, 517–18, *cert. denied,* 444 U.S. 881, 100 S.Ct. 170, 62 L.Ed.2d 110 (1979); *People v. Wheeler,* 22 Cal.3d 258, 263, 280, 282, 148 Cal.Rptr. 890, 583 P.2d 748, 752, 764, 765 (1978).[6]

Although we have never before expressly held that *Batson* challenges are waived if not raised during jury selection, our prior decisions also support this view. In *Wilson v. Hoke,* 945 F.2d 1250, 1251–52 (2d Cir.1991), we cited with approval the Fifth Circuit's requirement in *Jones* that objections be made contemporaneously. Furthermore, on several occasions we have observed that "*Batson* objections should be adjudicated and entertained during the process of jury selection." *United States v. Biaggi,* 909 F.2d 662, 679 (2d Cir.1990), *cert. denied,* 499 U.S. 904, 111 S.Ct. 1102, 113 L.Ed.2d 213 (1991). In *Biaggi,* although the defendant's objection was raised during jury selection, the trial judge deferred considering it in order to receive full-dress written motions. We admonished trial judges to rule on such objections during the jury selection, noting the "need to resolve a *Batson* claim at the point where prompt corrective action can be taken if the claim is successful." *Id.* In *United States v. Alvarado,* 891 F.2d 439, 445 (2d Cir.1989), *vacated on other grounds,* 497 U.S. 543, 110 S.Ct. 2995, 111 L.Ed.2d 439 (1990) (*Alvarado I* ), we stated that the trial judge "should promptly take corrective action before jury selection has been completed." And in *Roman v. Abrams,* 822 F.2d 214, 229 (2d Cir.1987), *cert. denied,* 489 U.S. 1052, 109 S.Ct. 1311, 103 L.Ed.2d 580 (1989), we stated that it is incumbent on the trial court to rule on *Batson*-type objections "during the jury selection process."

In view of the problems of responding to, ruling on, and remedying belated *Batson* challenges, we hold that the failure to object to the discriminatory use of peremptory challenges prior to the conclusion of jury selection waives the objection. As McCrory did not raise his objection to the prosecutor's use of his peremptory challenges until three and one half months after the conclusion of jury selection, he forfeited his *Batson* claim. Thus, the grant of habeas must be reversed and his conviction reinstated.

McCrory argues that it is unfair to penalize him for not objecting during jury selection because the prevailing law at the time of his trial precluded him from mounting a successful challenge to the exercise of peremptories unless he could show a pattern of dis-

---

6. In *Neil,* the Supreme Court of Florida held that in order to preserve such a claim the defendant "must make a timely objection." *Neil,* 457 So.2d at 486; *see also id.* at 485. The court clarified that by "timely" it meant "contemporaneous." *Id.* at 486 & n. 9.

Similarly, in recognizing the right to object to the prosecutor's discriminatory use of peremptory challenges, both the Massachusetts and California Supreme Courts contemplated an objection made during jury selection. In *Wheeler,* the court first noted the obligation of defense counsel to make a timely objection and to "make as complete a record of the circumstances as is feasible." *Wheeler,* 22 Cal.3d at 280, 148 Cal. Rptr. at 905, 583 P.2d at 764. The Court went on to hold that if a trial court found that the prosecutor's challenges violated the state constitution, the trial court

must dismiss the jurors thus far selected. So too it must quash any remaining venire, since the complaining party is entitled to a random draw from an entire venire not one that has been partially or totally stripped of members of a cognizable group by the improper use of peremptory challenges. Upon such dismissal a different venire shall be drawn and the jury selection process may begin anew.

*Wheeler,* 22 Cal.3d at 282, 148 Cal.Rptr. at 906, 583 P.2d at 765. *See Soares,* 377 Mass. at 491, 387 N.E.2d at 517–18 (adopting the remedy designed in *Wheeler* ). This remedy clearly envisions that the defendant would raise the objection, and the judge would rule on it, before the venire is dismissed.

criminatory challenges continuing from case to case. *See Swain v. Alabama,* 380 U.S. 202, 223–24, 85 S.Ct. 824, 837–38, 13 L.Ed.2d 759 (1965). We reject his argument for two reasons.

First, as we noted in *Roman,* in which we declined to excuse a default by a defendant who was tried three years before McCrory, "the issue had been perceived by other defendants and ... was a live one in the courts at the time." *Roman,* 822 F.2d at 223 (citation omitted).[7] At the time of McCrory's trial, a New York intermediate appellate court had held that a prosecutor's use of peremptory challenges to exclude prospective jurors solely on the basis of race violated the defendant's state constitutional rights. *People v. Thompson,* 79 A.D.2d 87, 435 N.Y.S.2d 739, 752 (2d Dep't 1981). Although it is true that the New York Court of Appeals had recently held that the New York State Constitution did not compel a departure from *Swain* (thereby overruling *Thompson sub silentio* ), *People v. McCray,* 57 N.Y.2d 542, 544, 457 N.Y.S.2d 441, 442, 443 N.E.2d 915 (1982), in opinions accompanying the denial of McCray's petition for certiorari, five Justices commented on the need to reexamine the question whether a prosecutor's discriminatory use of peremptory challenges violated the Constitution. *See McCray v. New York,* 461 U.S. 961, 103 S.Ct. 2438, 77 L.Ed.2d 1322 (1983)(opinion of Stevens, J.); *id.* at 963, 103 S.Ct. at 2439 (opinion of Marshall, J., dissenting from the denial of cert.). Moreover, in a published opinion, the United States District Court for the Eastern District of New York had granted McCray's habeas petition and set aside his conviction on the ground that the prosecutor's discriminatory use of her peremptory challenges violated McCray's constitutional rights, *McCray v. Abrams,* 576 F.Supp. 1244, 1249 (E.D.N.Y.1983), and appeal was pending in this court.[8] In addition, as noted above, the highest courts of two states had found violations of their own constitutions resulting from the discriminatory use of peremptory challenges. *Soares,* 377 Mass. at 486, 387 N.E.2d at 515; *Wheeler,* 22 Cal.3d at 276–77, 148 Cal.Rptr. at 902–04, 583 P.2d at 761–62.[9] It was clear that the issue of discriminatory peremptory challenges was one of turbulence rather than tranquility. This was not an area of law so firmly settled that McCrory's counsel could legitimately claim to have allowed discriminatory challenges to pass on the belief that their lawfulness was not open to doubt.

Second, the prejudice to the prosecution is at least as great as to the defendant. The question would ultimately be whether the prosecutor had cast illegal discriminatory challenges. Because McCrory failed to raise the question contemporaneously, the prosecutor had no notice of the need to make a record of the reasons for his challenges. The delay in raising his objection led the district court to vacate McCrory's conviction not on the basis of a finding that the prosecutor in fact exercised discriminatory challenges, but, following *Batson* 's burden-shifting rule, simply because the prosecutor was understandably unable at the hearing, 10 years after trial, to explain his challenges. Accordingly, the conviction was vacated for a violation that may never have occurred. The unfair prejudice to the prosecution from allowing tardy objections is as severe as the prejudice to the defendant that results from enforcement of a timeliness rule.

---

7. We note also that the decision in which the Fifth Circuit held that objections to the use of peremptory challenges must be raised contemporaneously involved a defendant who, like McCrory, was tried prior to the Supreme Court's decision in *Batson. Jones,* 864 F.2d at 362.

8. In addition to providing McCrory the tools with which he could have constructed his claim, prior decisions put him on notice of the need for a timely objection. In *Thompson,* the court explained that "[i]f, as the jury selection proceeds, the defendant believes that the prosecutor's use of peremptory challenges is constitutionally improper, he must raise the issue in a timely manner at the risk of waiver, and make as complete a record in support of his claim as is possible." *Thompson,* 435 N.Y.S.2d at 753–54 (footnote omitted). *See also People v. Cassell,* 101 A.D.2d 1013, 476 N.Y.S.2d 678, 679 (4th Dep't 1984)(declining to reach the merits of a defendant's objection to the prosecutor's use of peremptory challenges "because the voir dire was not recorded and there is no basis in the record to ascertain whether defendant established a prima facie case").

9. As noted above, the Supreme Court of Florida also found a similar violation of its constitution. *Neil,* 457 So.2d at 486. However, as that decision came down during McCrory's trial, we do not hold him responsible for awareness of it.

## II. Is A Defendant Who Belatedly Raises A Batson Claim Entitled To The Benefit Of The Burden–Shifting Rule?

■ Even were we not to rule that a *Batson* objection is untimely if made after the conclusion of jury selection, we doubt that we would allow the grant of the writ to stand. Rather, we would need to consider whether the aspect of *Batson* that shifts the burden of explanation to the prosecutor applies regardless how long after jury selection the defendant first raises the contention.

According to the evidentiary formula laid out in *Batson,*

> Once the defendant makes a prima facie showing [of purposeful discrimination], the burden shifts to the State to come forward with a neutral explanation for challenging black jurors. . . . The trial court then will have the duty to determine if the defendant has established purposeful discrimination.

*Id.* at 97–98, 106 S.Ct. at 1723–24.

*Batson*'s burden-shifting formula makes sense when applied to an objection raised sufficiently promptly that the attorney exercising the challenges can reasonably be expected to remember the reasons for the challenges. On the other hand, it would be altogether unreasonable to shift the burden of explanation if the objection is so tardily made that the challenging attorney cannot be reasonably expected to remember.

The reasons lawyers prefer one juror over another can involve subtle fleeting impressions. During jury selection, lawyers observe a large number of jurors (here 40) over a relatively short time, and form the impressions that will determine which ones they challenge. While the jurors selected for trial remain under the lawyer's scrutiny throughout the trial, those challenged disappear from view after only a brief observation. Lawyers, excepting those possessing remarkable capacity for memory, are unlikely to remember the challenged jurors or the decision to challenge for very long.

For these reasons, even were we not ruling that McCrory's protest was itself untimely because it was not made until after the completion of jury selection, we doubt very much that we would find that McCrory was entitled to receive the benefit of the burden-shifting rule based on an objection raised so long after jury selection.[10]

Without benefit of the burden shifting, McCrory would have failed to establish entitlement to the writ. The district judge found that McCrory had barely succeeded in making out a prima facie showing, and had not shown illegal discrimination by a preponderance of the evidence. We agree. Thus, if the burden of explanation were not shifted to the prosecution, McCrory's failure to carry his burden of showing illegal discrimination would require the dismissal of his petition.

### Conclusion

The judgment of the district court granting a writ of habeas corpus is reversed. McCrory's conviction is reinstated and the petition is dismissed.

10. We would need to consider whether it was necessary to remand to the district court for findings on whether, at the time of McCrory's motion, Belling had in fact forgotten, and if so whether the passage of three and one half months made it unreasonable to expect him to remember, the reasons for his challenges.