08-5071-cr
US v. PARIS

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

August Term 2009

Argued: July 13, 2010          Decided: September 17, 2010)

Docket No. 08-5071-cr

————————————————

UNITED STATES OF AMERICA,

*Appellee*,

v.

RONALD MARTINEZ, BRIAN FORBES, ANTONIO DOVE, also known as
Dontell Dove, also known as Tone, JEROME HARGROVE, also known as
June, WARREN WILLIAMS, CHRISTOPHER FANNING, KAZIMIERZ SULEWSKI,
also known as Kaz, STEVEN TANUIS, SHANAYA HICKS,

*Defendants*,

DENNIS PARIS, also known as Rahmyti,

*Defendant-Appellant*.

————————————————

Before:   JACOBS, *Chief Judge*, and WESLEY and CHIN, *Circuit
          Judges*.

          Appeal from a judgment of the United States District

Court for the District of Connecticut (Droney, *J*.) convicting

defendant-appellant of sex trafficking crimes.

          AFFIRMED.

JEREMIAH DONOVAN, Old Saybrook, Connecticut, *for Defendant-Appellant*.

WILLIAM J. NARDINI, Assistant United States Attorney (Nora R. Dannehy, United States Attorney, and Sandra S. Glover, Assistant United States Attorney, District of Connecticut, on the brief), *for Appellee*.

CHIN, *Circuit Judge*:

In this case, a jury convicted defendant-appellant Dennis Paris of sex trafficking crimes, including sex trafficking of minors and sex trafficking by force, fraud, or coercion. The evidence showed that for more than five years, Paris operated a prostitution business in and around Hartford, Connecticut, exploiting and abusing young women and teenage girls. The district court (Droney, *J.*) sentenced Paris principally to thirty years' imprisonment.

During the jury selection process, each side raised an objection pursuant to *Batson v. Kentucky*, arguing that the other side had exercised peremptory strikes based on gender. At the outset of jury selection, Paris's counsel stated explicitly that he wanted to strike female jurors because of their gender because he believed that, in light of the nature of the charges, men would be "fairer" to Paris than women. The district court

-2-

refused the request and prohibited defense counsel from exercising peremptory challenges based on gender. Later in jury selection, after the Government used its first four peremptory strikes against men, Paris objected under *Batson*. The district court overruled the objection, holding that Paris had not made a prima facie showing that the Government was exercising its peremptory challenges based on gender.

We affirm. We hold that a defendant in a criminal case may not, consistent with the Constitution, exercise peremptory challenges based on gender. Accordingly, the district court correctly barred Paris from doing so. We also affirm the district court's ruling that Paris did not, merely by relying on the fact that the Government's first four strikes were against men, make a prima facie showing that the Government was improperly exercising peremptory challenges based on gender.

STATEMENT OF THE CASE

A. The Facts

Construed in the light most favorable to the Government, *see United States v. Gomez*, 580 F.3d 94, 97 (2d Cir. 2009), the evidence at trial showed the following:

From at least 1999 until his arrest in 2004, Paris forced or induced teenage girls and young women to engage in sex

-3-

with men for money. Paris operated his prostitution business in and around Hartford, and recruited his victims to work for him as prostitutes from around Hartford and as far away as New Hampshire.

In 1999, Paris induced a fourteen-year old ninth-grader to work for him as a prostitute doing "calls" -- engaging in sexual intercourse with men for money -- in a motel and at customers' homes. Over the course of a year and a half, she did approximately 100 "calls" for Paris.

In 2002, Paris employed a sixteen-year old girl who had run away from home as a prostitute for about two weeks. When she told Paris her age after she began working for him, he told her to say that she was nineteen if she were asked her age.

In late 2003, Paris began using two eighteen-year old girls as prostitutes. Although he paid them at first, eventually he held them against their will and exploited their addiction to heroin. He raped both of them, used force and intimidation against both of them, and physically and psychologically abused them.

Paris's prostitution business ended in June 2004 when he was arrested by the Hartford Police for violating the terms of his probation (imposed for unrelated crimes). Following his

-4-

arrest, one of Paris's victims left the motel where he had been forcing her to stay and tried to work as a prostitute on the street.  She was arrested and the ensuing investigation led to the arrest and conviction of Paris and others on multiple sex trafficking and related charges.

B.    Proceedings Below

Paris was indicted, with others, for conspiracy to use an interstate facility to promote prostitution (18 U.S.C. § 371), sex trafficking of a minor (18 U.S.C. § 1591), sex trafficking by force, fraud, or coercion (18 U.S.C. § 1591), and use of an interstate facility to promote prostitution (18 U.S.C. § 1952(a)(3)).[1]  He was the only defendant to go to trial.

Before trial, defense counsel submitted written notice to the district court that Paris intended to exercise peremptory challenges on the basis of gender.  Shortly after jury selection began on May 23, 2007, defense counsel explained why he intended

---

[1]    Paris was also indicted for money laundering, but these counts, as well as one of the use of interstate facility counts, were dismissed at the request of the Government before the case was submitted to the jury.

to exercise his peremptory challenges to strike women from the jury:

> [W]omen feel about this case very, very, very differently from men. And . . . probably the major factor in how a juror will approach this case is her gender. And having reached that conclusion, I intend to make gender one of the primary -- one of my primary reasons for striking jurors . . . . I would doubt that I will exercise a peremptory against a male juror. My objective here is to get as many male jurors on the jury as I can, because I think that they will be fairer to Mr. Paris than female jurors will be.

Defense counsel further stated that "gender probably, almost surely, will be my primary reason for exercising peremptories." The district court offered to rule on the constitutionality of gender-based peremptory challenges prior to voir dire, but the parties requested that the court wait to rule until the peremptory challenge stage of the jury selection process.

After all challenges for cause were resolved, thirty-six prospective jurors remained. The district court randomly selected twenty-eight -- fifteen men and thirteen women -- for the initial peremptory challenge phase. Paris used his first four peremptory challenges to strike women. Following Paris's fourth strike, the Government raised a *Batson* challenge and argued that Paris's openly expressed intention to strike women

from the jury combined with his four straight strikes of female jurors and the lack of a legitimate reason for excluding them established a prima facie case of impermissible gender discrimination.  Defense counsel then conceded that gender was at least part of the reason for his peremptory challenges:

> When your honor read the nature of the charges to the jurors, I watched their reactions carefully and I noticed . . . a tightening of the lips and a frown on the faces of many of the women jurors, whereas the men had almost no response whatsoever. This small perception is the kind of thing that we use when we're picking jurors and it confirms what I know, [which] is that women will approach this case in a different manner than men.

Defense counsel acknowledged that gender "absolutely" was one of the reasons he exercised his first four peremptory challenges against women, and even stated that in the end gender could be the sole reason for some of his strikes.

The district court then ruled that gender-based peremptory challenges violate the Equal Protection Clause of the U.S. Constitution:  "[B]ased on the precedent of *Batson v. Kentucky*, *Georgia v. McCollum*, and *J.E.B. v. Alabama*, the Court finds that Mr. Paris may not exercise peremptory challenges based on gender."  The district court then asked defense counsel to explain the reasons for the exercise of his first four peremptory

-7-

challenges.  When Paris articulated non-gender-based reasons for those challenges, the Government withdrew its *Batson* challenge as to one of Paris's strikes and the district court accepted Paris's reasons for his remaining strikes.  Accordingly, the district court allowed Paris's strikes to stand.

Paris used his next two peremptory challenges against prospective female jurors, and then asked the district court to reconsider its ruling forbidding gender-based challenges.  In particular, Paris pointed out that the Government had exercised its first three challenges against men and argued that he should be permitted to strike female jurors to "balance" the jury between men and women.  Paris's counsel argued:

> [W]hen . . . the other side, whether it's for reasons that are subject to question under *Batson* or for totally other reasons, has exercised its challenges all against one gender, it's appropriate for me then to try to compensate for that by . . . taking gender into account in exercising my challenges.

After the district court reiterated its ruling that Paris could not exercise peremptory challenges based on gender, Paris used his seventh and eighth peremptory challenges to strike a man and a woman.  Defense counsel then reiterated to the court his goal of eliminating as many women as possible from the jury and stated that he would have used both challenges against women

"if your Honor had not ordered me otherwise."

Following Paris's seventh and eighth peremptory challenges, the Government exercised its fourth peremptory challenge, which, like each of its prior three challenges, was against a man. At that point, defense counsel raised a *Batson* challenge on behalf of Paris:

> It's hard to believe that [the Government has] not taken into account gender in exercising each of the four peremptories that they have against males. And so I think that in a case like this where gender is such an important issue, I think that issuing four straight challenges against the male [panel members] demonstrates . . . that the Government is issuing its peremptories based on gender . . . .

The Government expressed its willingness to articulate the permissible reasons for its peremptory challenges, but argued that Paris had not made out a prima facie case of discrimination. In particular, the Government pointed out that Paris's *Batson* challenge was based on nothing more than the fact that the Government used its first four challenges against men. Unlike Paris, the Government never expressed any intention to strike jurors on the basis of gender. In response, Paris argued that the nature of the case also raised an inference of improper gender bias by the Government. The district court rejected his

argument and ruled that a prima facie case of gender discrimination had not been established because Paris "has not shown that the circumstances raised an inference of sex discrimination by simply striking four men at this time."

Following the rejection of his *Batson* challenge, Paris exercised his final two peremptory challenges against a man and a woman. Paris then reiterated that he would have used his seventh peremptory challenge against a woman if he had been permitted to consider gender.

In the end, the jury consisted of eight men and four women.

On June 14, 2007, after seven days of evidence and one day of deliberation, the jury convicted Paris on all pending counts. On October 14, 2007, the district court sentenced Paris principally to thirty years' imprisonment.

This appeal followed.

                              DISCUSSION

Two principal issues are presented:  first, whether the district court erred in prohibiting Paris from exercising peremptory challenges based on gender; and, second, whether the district court erred in ruling that Paris had not made a prima facie showing of a *Batson* violation based on the fact the

Government's first four peremptory challenges were against men. We address each issue in turn.

A.   Gender-Based Peremptory Challenges

The district court's holding that a defendant's use of gender-based peremptory challenges in a criminal case violates the Constitution presents a question of law that we review de novo. *See United States v. Hester*, 589 F.3d 86, 90 (2d Cir. 2009), *cert. denied*, 130 S. Ct. 2137 (Apr. 19, 2010).

In *Batson v. Kentucky*, the Supreme Court held that the Equal Protection Clause forbids a prosecutor from exercising peremptory challenges based on race.  476 U.S. 79, 89 (1986).  In reaching its decision, the Supreme Court considered the right of a defendant in a criminal case to a fair trial as well as the rights of potential jurors to serve on the jury and the public's perception of the jury system.  *Id*. at 87.  The Court held that "[t]he harm from discriminatory jury selection extends beyond that inflicted on the defendant and the excluded juror to touch the entire community[,] . . . undermin[ing] public confidence in the fairness of our system of justice."  *Id*.

The Supreme Court extended the prohibition against race-based peremptory challenges to strikes by defendants in criminal cases in *Georgia v. McCollum*, 505 U.S. 42, 55 (1992).

The Court ruled that the exercise of a peremptory challenge by any party, including a defendant in a criminal case, constitutes state action because it is the exercise of the power to choose "the institution of government on which our judicial system depends." *Id.* at 54. A few years later, the Supreme Court held in *J.E.B. v. Alabama* that peremptory challenges based on gender by a defendant in a civil case are unconstitutional. 511 U.S. 127, 129 (1994) ("[G]ender, like race, is an unconstitutional proxy for juror competence and impartiality.").

Paris correctly notes that neither the Supreme Court nor the Second Circuit has decided a case in which a defendant in a criminal case sought to exercise gender-based peremptory challenges.[2] In the absence of controlling precedent, Paris argues that because gender is different from race, the district

_____

[2] As the district court noted, in *United States v. Martinez-Salazar*, 528 U.S. 304, 315 (2000), the Supreme Court held that "[u]nder the Equal Protection Clause, a defendant may not exercise a peremptory challenge to remove a potential juror solely on the basis of the juror's *gender*, ethnic origin, or race." (Emphasis added). This was dictum with respect to gender, however, as *Martinez-Salazar* did not involve gender-based peremptory challenges. Moreover, the Supreme Court cited as authority for the statement only *J.E.B.*, which involved gender-based strikes in a civil case; *Hernandez v. New York*, 500 U.S. 352 (1991), which involved ethnicity-based strikes in a criminal case; and *Batson*, which involved race-based strikes in a criminal case. *Martinez-Salazar*, 528 U.S. at 315.

-12-

court should have permitted him to strike women from the panel based on their gender.  For support, Paris relies heavily on Justice O'Connor's concurring opinion in *J.E.B.*, which argued that the Court's holding "should be limited to the *government's use of gender-based peremptory strikes*," 511 U.S. at 147, explaining:

> We know that like race, gender matters.  A plethora of studies make clear that in rape cases, for example, female jurors are somewhat more likely to vote to convict than male jurors. . . . Moreover, though there have been no similarly definitive studies regarding, for example, sexual harassment, child custody, or spousal or child abuse, one need not be sexist to share the intuition that in certain cases a person's gender and resulting life experience will be relevant to his or her view of the case.

511 U.S. at 148-49 (citations omitted).  Paris also argues that gender classifications are reviewed under a lower standard of scrutiny than race-based classifications, and defends his gender-based peremptory challenges on the ground that his interest in eliminating biased jurors outweighed any harm caused by striking female members of the panel.

We reject Paris's arguments, and hold that the Constitution bars a defendant in a criminal case from exercising peremptory challenges based on gender, for the following reasons:

-13-

First, the principles set forth by the Supreme Court in *Batson*, *McCollum*, and *J.E.B.* apply with equal force to the exercise of peremptory challenges by a defendant in a criminal case. As these cases make clear, discriminatory jury selection harms not just the parties to the case but also the prospective jurors as well as "the entire community" as it "undermine[s] public confidence in the fairness of our system of justice." *Batson*, 476 U.S. at 87. There is no principled basis for distinguishing between civil and criminal cases for these purposes, or between the exercise of a peremptory strike by the government and a defendant.

Second, Paris's arguments as to the distinctions between race and gender for purposes of a *Batson* analysis were considered and rejected by the Supreme Court in *J.E.B.* There, the State of Alabama, acting on behalf of the mother of a child born out of wedlock, sought to strike male jurors from a trial to determine the identity of the child's father.[3] Alabama justified

---

[3] Because *J.E.B. v. Alabama* involved the use of peremptory challenges by the State of Alabama, the Supreme Court's equal protection analysis was pursuant to the Fourteenth Amendment. This case involves a criminal defendant in federal court, and thus our equal protection analysis is based on the Due Process clause of the Fifth Amendment. *See Bolling v. Sharpe*, 347 U.S. 497, 498-500 (1954). Of course, we approach equal protection claims under the Fifth Amendment in the same fashion as we do

-14-

its discriminatory peremptory challenges on the grounds that men "might be more sympathetic and receptive to the arguments" of the putative father. 511 U.S. at 137-38. Just as in the instant action, the rationale for treating men and women differently was based on a "quasi-empirical claim that women and men may have different attitudes about certain issues justifying the use of gender as a proxy." *Id*. at 138 n.9. The Supreme Court held that "gender-based peremptory challenges are not substantially related to an important government objective," and rejected the argument that their use could be defended based on "'the very stereotype the law condemns.'" *Id*. at 137 n.6, 138 (quoting *Powers v Ohio*, 499 U.S. 400, 410 (1991)). Although Paris's counsel was emphatically blunt in explaining his reasons for striking women from the jury, as the Supreme Court held, "[e]ven if a measure of truth can be found in some of the gender stereotypes used to justify gender-based peremptory challenges, that fact alone cannot support discrimination on the basis of gender in jury selection." *Id*. at 139 n.11.

Third, although neither the Supreme Court nor this Court has explicitly ruled on the use of gender-based peremptory

such claims under the Fourteenth Amendment. *See Weinberger v. Wiesenfeld*, 420 U.S. 636, 638 n.2 (1975).

challenges by a defendant in a criminal case, three Circuits have held that the Constitution's equal protection guarantees bar defendants in criminal cases from striking potential jurors on the basis of gender. *See, e.g.*, *United States v. Grant*, 563 F.3d 385, 389 (8th Cir. 2009) ("[T]he government made a prima facie showing of a *J.E.B.* gender violation when the government offered its objection to the pattern of [defendant's] strikes and told the district court that [defendant] exercised ten of her eleven strikes on females."), *cert. denied*, 130 S. Ct. 1504 (2010); *United States v. Kimbrel*, 532 F.3d 461, 466 (6th Cir. 2008) ("*Batson* applies to peremptory challenges based on race or gender. And it applies to peremptory challenges by the government and by criminal defendants.") (citations omitted); *United States v. De Gross*, 960 F.2d 1433, 1439-40 (9th Cir. 1992) (en banc) ("[E]qual protection principles prohibit striking venirepersons on the basis of their gender. . . . We hold that because the evils of discriminatory peremptory strikes result from the misuse of peremptory challenges, regardless of which party strikes the venireperson, the Fifth Amendment similarly limits a federal criminal defendant's peremptory strikes."). Moreover, as noted, the Supreme Court has concluded as much in dictum. *See United States v. Martinez-Salazar*, 528 U.S. at 315.

In short, the district court correctly ruled that Paris could not exercise peremptory challenges based on gender.[4] The Constitution "prohibits discrimination in jury selection on the basis of gender." *J.E.B.*, 511 U.S. at 146. That rule applies whether the government or the defendant is exercising the peremptory challenge, and whether the case is criminal or civil in nature.

B.   The Claim of Gender Discrimination By The Government

Paris argues that the district court erred when it held that he had failed to make out a prima facie showing of discrimination by the Government. We discuss the standard of review to be applied to a district court's rejection of a *Batson* challenge on this basis and we then consider the district court's rejection of Paris's challenge to the Government's exercise of its peremptory strikes.

---

[4] Paris also argues that after the Government used its first three strikes against male jurors, he should have been permitted to strike female jurors based on gender "to get a jury that may be equally balanced between men and women." Accepting Paris's argument would subordinate the Constitution's equal protection guarantees whenever the venire panel is not equally divided between the sexes. The district court correctly rejected this argument.

-17-

## 1. Applicable Law

### a. *Batson*'s Burden-Shifting Framework

When a party raises a *Batson* challenge, the trial court uses a three-part burden-shifting framework to assess whether the challenged peremptory strike is based on an impermissible discriminatory motive. *See Batson*, 476 U.S. at 93-98. First, the objecting party must make a prima facie case that opposing counsel exercised a peremptory challenge on the basis of a protected class. *Hernandez v. New York*, 500 U.S. 352, 358-59 (1991). To establish a prima facie case of purposeful discrimination, the objecting party must show that the other party challenged members of a specific group and that the totality of the circumstances raises an inference of discriminatory motive. *See Batson*, 476 U.S. at 96-97.

Second, if a prima facie case is established, the burden shifts to the challenged party to present a non-discriminatory reason for striking the jurors in question. *See id.* at 97. At this stage, proffered explanations are deemed valid unless discriminatory intent is inherent in the challenged party's explanation. "Although the [challenged party] must present a comprehensible reason, '[t]he second step of this process does not demand an explanation that is persuasive, or

-18-

even plausible'; so long as the reason is not inherently discriminatory, it suffices." *Rice v. Collins*, 546 U.S. 333, 338 (2006) (quoting *Purkett v. Elem*, 514 U.S. 765, 767-68 (1995)).

Finally, if a valid reason is articulated, the trial court considers the totality of the circumstances to determine whether the objecting party has carried its burden of proving purposeful discrimination by a preponderance of the evidence. *Hernandez*, 500 U.S. at 363-64. Despite *Batson*'s three part framework, "the ultimate burden of persuasion regarding improper motivation rests with, and never shifts from, the opponent of the strike." *Rice*, 546 U.S. at 333-34 (quoting *Purkett*, 514 U.S. at 768).

b.   Standard of Review

This Circuit has not ruled on the standard of review to be applied to a district court's determination whether a party has met the first prong of the *Batson* analysis by showing a prima facie case of discrimination. The Supreme Court has held that "a trial court's ruling on the issue of discriminatory intent must be sustained unless it is clearly erroneous," *Snyder v. Louisiana*, 552 U.S. 472, 477 (2008), but it has not ruled on the standard of review to be applied to a ruling on step one of the *Batson* inquiry. Other circuits have split on the question,

dividing on whether the determination is subject to clear error or de novo review.[5]

We hold that a district court's determination whether a party has established a prima facie case under *Batson* is subject to review for abuse of discretion. The question whether a prima facie case of discrimination has been shown presents a mixed question of law and fact. *See Overton v. Newton*, 295 F.3d 270, 276-77 (2d Cir. 2002) (threshold determination of whether *Batson* prima facie case has been established "involves both issues of fact and an issue of law") (citation omitted); *accord Mahaffey*, 162 F.3d at 484 (same). The trial court is entitled to some deference, as there clearly is an element of fact-finding to the determination: the trial court has heard the answers of the

---

[5] *Compare, e.g.*, *Brewer v. Marshall*, 119 F.3d 993, 1004 (1st Cir. 1997) ("That same clear error standard applies to rulings on whether the defendant has made a *Batson* prima facie case."), *and Tolbert v. Page*, 182 F.3d 677, 685 (9th Cir. 1999) (*en banc*) ("A trial court's determination of whether a prima facie case of discrimination under *Batson* has been established is to be reviewed deferentially, on direct review for clear error, or in the habeas context, by application of the statutory presumption of correctness."), *with Mahaffey v. Page*, 162 F.3d 481, 484 (7th Cir. 1998) ("Unlike the ultimate issue of discriminatory intent, which as a factual question is entitled to deferential review . . . , the preliminary question of whether a [*Batson*] prima facie case has been shown presents a mixed question of law and fact . . . , which the appellate courts should review de novo.") (citations omitted).

-20-

prospective jurors and questions and statements of the lawyers in voir dire and observed the demeanor of both.  *See, e.g.*, *Brewer*, 119 F.3d at 1004.[6]  On the other hand, the inquiry is not entirely factual, as the question of whether an inference of discrimination can be drawn (*e.g.*, from the fact of four straight strikes against men) is often more a question of law than fact. *See, e.g.*, *Mahaffey*, 162 F.3d at 484; *see also Overton v. Newton*, 295 F.3d at 276-77 (once trial court performs its fact-finding, it must decide, as matter of law, whether prima facie case of discrimination has been established).  While one could fairly argue that the determination of a *Batson* prima facie case could be subject to a two-step review -- clear error for factual findings and de novo for rulings of law -- in this context the inquiries often are not clearly delineated.  Accordingly, we conclude that the better course is to apply an abuse of discretion standard of review.  *See, e.g., Cooter & Gell v. Hartmax Corp.*, 496 U.S. 384, 405 (1990) (holding that abuse of

---

[6]    *See also United States v. Bergodere*, 40 F.3d 512, 517 (1st Cir. 1994) ("Evaluative judgments concerning juror suitability are often made partially in response to nuance, demeanor, body language, and a host of kindred considerations. Thus, the trial judge, who sees and hears both the prospective juror and the opposing attorneys in action, is in the best position to pass judgment on counsel's motives.").

-21-

discretion standard applies to review on appeal of determinations of whether Fed. R. Civ. P. 11 was violated, as both factual and legal inquiries are required).  Of course, the exercise of discretion based on clearly erroneous facts or incorrect rulings of law would necessarily constitute an abuse of discretion.  *Id.; accord Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001) (citing *Cooter & Gell v. Hartmax Corp.*, 496 U.S. at 405).

　　2.　Application

　　　　We conclude that the district court did not abuse its discretion in holding that Paris had failed to show a prima facie case of discrimination under *Batson*.

　　　　Paris's challenge was based on nothing more than the Government's exercise of its first four peremptory challenges against men.  In certain circumstances, a pattern of peremptory challenges alone may give rise to an inference of impermissible discrimination.  *Batson*, 476 U.S. at 97; *see, e.g., Mahaffey*, 162 F.3d at 485 (prima facie case shown by pattern of strikes where prosecutor excused all seven prospective African-American jurors); *McCain v. Gramley*, 96 F.3d 288, 292 (7th Cir. 1996) (inference of discrimination may be drawn "where there are only a few members of a racial group on the venire panel and one party strikes each one of them").  Here, however, the district court

did not abuse its discretion in concluding that the Government's pattern of four strikes in a row against men did not, by itself, establish a prima facie case of gender discrimination.

First, at the start of the peremptory challenge stage, more than half of the prospective jurors were men, as there were fifteen men and thirteen women.  Second, Paris (who had ten strikes to the Government's six), used seven of his first eight challenges against women, which increased the percentage of men in the jury pool and the statistical likelihood that the Government would use its peremptory challenges against men.  By the time the Government exercised its third and fourth peremptory challenges, the odds were nearly two to one, based just on the numbers, that a male juror would be stricken.  *See United States v. Alvarado*, 923 F.2d 253, 255-56 (2d Cir. 1991) ("Only a rate of minority challenges significantly higher than the minority percentage of the venire would support a statistical inference of discrimination.").  Third, although Paris's counsel had announced that he was going to strike women jurors because of their gender, the Government had made no such statement about male jurors.

District courts have broad latitude to consider the totality of the circumstances when determining whether a party has raised an inference of discrimination.  *Batson*, 476 U.S. at

96-97, 98 n.21.  Based on the record here, we conclude that the district court did not abuse its discretion in determining that Paris had failed to make a prima facie showing of discrimination by the Government in its exercise of its peremptory strikes.

CONCLUSION

We have considered Paris's remaining arguments on appeal and conclude that they are without merit.

For the foregoing reasons, the judgment of conviction and sentence are AFFIRMED.