13-525-cr
*United States v. Bontzolakes*

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# SUMMARY ORDER

Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this Court's Local Rule 32.1.1. When citing a summary order in a document filed with this Court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 4th day of September, two thousand thirteen.

PRESENT:

JOSÉ A. CABRANES,
CHESTER J. STRAUB,
SUSAN L. CARNEY,
            *Circuit Judges.*

---

UNITED STATES OF AMERICA,

            *Appellee,*

            v.                                                    No. 13-525-cr

JACQUELINE BONTZOLAKES,

            *Defendant-Appellant.*

---

**FOR DEFENDANT-APPELLANT:**        TRACY HAYES, (MaryBeth Covert, Jayme L. Feldman, Of Counsel, *on the brief*) Federal Public Defender's Office, Buffalo, NY.

**FOR APPELLEE:**        MONICA J. RICHARDS, Assistant United States Attorney *for* William J. Hochul, United States Attorney for the Western District of New York, Buffalo, NY.

Appeal from a judgment of conviction entered on January 28, 2013 by the United States District Court for the Western District of New York (Billy Roy Wilson, *Judge*).[*]

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the cause be **REMANDED** to the District Court under instructions to conduct a "reconstruction hearing," or, if it is no longer possible to do so effectively, to enter an order that the defendant is entitled to a new trial. *See Barnes v. Anderson*, 202 F.3d 150, 157 (2d Cir. 1999); *Tankleff v. Senkowski*, 135 F.3d 235, 250 (2d Cir. 1998).

Defendant-appellant Jacqueline Bontzolakes appeals from the District Court's judgment of conviction, following a jury trial, for two counts of international parental kidnaping, in violation of 18 U.S.C. § 1204, and one count of making false statements, in violation of 18 U.S.C. § 1001(a)(1). On appeal, defendant, represented by counsel, claims that the government's use of peremptory challenges against female members of the venire violated *Batson v. Kentucky*, 476 U.S. 79 (1986).[1] We assume the parties' familiarity with the facts and procedural history of this case, to which we refer only as necessary to explain our decision to remand the cause to the District Court.

## BACKGROUND

Defendant is a single mother of four children, including two minor daughters of different fathers, N.G. and Z.B (jointly "daughters"). During the relevant period, defendant did not have custody of N.G. and was in custody proceedings regarding Z.B. On October 13, 2009, defendant applied for passports for her daughters, omitting the name of Z.B.'s father from the application. The undisputed evidence presented at trial established that defendant then travelled with her daughters, without permission or consent from their fathers or a court, to Barbados on February 15, 2010. Having overstayed her visa, defendant was arrested on March 23, 2010, deported from Barbados to the United States, and then arrested by American law enforcement agents. At that time, defendant stated that she had left the country with her children in order to protect N.G. from her abusive father.

A federal grand jury subsequently indicted defendant for two counts of international parental kidnaping and one count of making false statements and the case proceeded to trial on September 24, 2012. During jury selection, after dismissals "for cause," 31 jurors remained in the venire,

---

[*] The Honorable Billy Roy Wilson, United States District Judge for the Eastern District of Arkansas, sitting by designation.

[1] Defendant also raises a number of other claims on appeal, including that (1) the District Court erred in not granting her a judgment of acquittal with respect to the international parental kidnaping counts; (2) the District Court erred in three evidentiary rulings relating to her affirmative defense; and (3) the District Court committed procedural and substantive error in sentencing. Given our remand of the cause based on defendant's *Batson* challenge, we do not reach her other claims.

including 12 women. The government then employed five of its seven peremptory strikes to dismiss women from this jury pool. Defense counsel raised a timely *Batson* challenge to the government's use of its peremptory strikes, arguing that this pattern of strikes and the resulting jury pool constituted intentional discrimination on the basis of sex. In response, the District Court directed the government to provide explanations for having stricken each of the female jurors. Following the government's proffer of reasons for most of the jurors, the District Court simply stated that the government's reasons were sufficient. After hearing the government's explanations for dismissing all five female veniremembers, the District Court denied defendant's *Batson* challenge and the case proceeded to trial. On September 27, 2012, the jury reached a guilty verdict on all counts.

This timely appeal followed. Following oral argument on August 21, 2013, we requested, and have now received, supplemental briefing by the parties on the degree of explanation a district court is required to give with respect to the third step of the analysis set forth by the Supreme Court in *Batson*.

## DISCUSSION

On appeal, defendant claims that the government's use of peremptory challenges against five female members of the venire violated the Supreme Court's holding in *Batson v. Kentucky*, 476 U.S. 79 (1986), and its progeny that a prosecutor's use of certain peremptory challenges during jury selection is prohibited by the United States Constitution. Although first announced in the context of race, we note that since *Batson*, the Supreme Court has extended this doctrine to sex. *See, e.g., United States v. Martinez-Salazar*, 528 U.S. 304, 315 (2000); *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127 (1994); *United States v. Martinez*, 621 F.3d 101, 107 (2d Cir. 2010).

*Batson* adopted a burden-shifting approach for determining whether peremptory challenges have been used in a discriminatory manner. First, the moving party must establish a *prima facie* case of discrimination; the opposing party must then provide a neutral justification for the exercise of the challenge; and, finally, the district court must evaluate whether the moving party has satisfied his ultimate burden of establishing that the peremptory challenge was the result of "purposeful discrimination." *Batson*, 476 U.S. at 93–98; *Martinez*, 621 F.3d at 108-09.

In the instant case, we are persuaded that defendant established a *prima facie* case of discrimination based on sex, based on the government's use of five peremptory strikes against women, and the resulting composition of the venire. *See Brown v. Alexander*, 543 F.3d 94, 101 (2d Cir. 2008) ("[W]e have said that we have no doubt that statistics, alone and without more, can, in appropriate circumstances, be sufficient to establish the requisite *prima facie* showing." (internal quotation marks omitted)). Likewise, the record is clear that the District Court properly inquired into the government's sex-neutral justifications for dismissing each of the five female jurors. At

3

issue, then, is the third step of the *Batson* inquiry, which requires a district court to make "an ultimate determination on the issue of discriminatory intent based on all the facts and circumstances." *United States v. Alvarado*, 923 F.2d 253, 256 (2d Cir. 1991).

We have explained that "[t]he third-stage analysis [under *Batson*] compels courts to determine the credibility of the proffered explanations." *Barnes v. Anderson*, 202 F.3d 150, 156 (2d Cir. 1999). Here, the District Court's terse acceptances of the government's sex-neutral justifications left unclear whether it actually performed the determination required at the third step of *Batson*. *Id.* at 157 (finding error where "[i]t [was] not clear . . . whether the district court [ ] found that defendants' explanation was credible and, therefore, that plaintiffs had failed to carry their ultimate burden of proof or, instead, that defendants' explanation merely sufficed to satisfy their second-step burden of articulating a non-racial explanation."). To the extent that the District Court made any determinations at the third step of *Batson*—as opposed to merely accepted the government's statement of sex-neutral explanations at the second step of *Batson*—it did not, in most instances, provide any basis for its determinations. *Jordan v. Lefevre*, 206 F.3d 196, 200 (2d Cir. 2000) (holding that "the district court's conclusory statement that the prosecutor's explanations were [ ] neutral did not satisfy *Batson*'s third step."); *Barnes*, 202 F.3d 156-57 ("We cannot square the district court's explicit refusal to rule on the credibility of either attorney's explanation with the court's duty under the third step of *Batson*."); *Alvarado*, 923 F.2d at 257; *cf. Jordan*, 206 F.3d at 200 ("We also have disapproved a trial court conducting its review of a *Batson* application with undue haste and ruling in a summary fashion."). In these circumstances, we remand the cause for the District Court to conduct a "reconstruction hearing," that is, "a hearing to reconstruct the prosecutor's state of mind at the time of jury selection, and thereby determine whether the proffered [sex]-neutral explanation[s] for the striking of the [female] juror[s] w[ere] pretextual." *Dolphy v. Mantello*, 552 F.3d 236, 240 (2d Cir. 2009). If, however, the District Court determines that the passage of time or other factors have "unduly impaired" its ability "to make a fair determination of the prosecution's intent," *Alvarado*, 923 F.2d at 256, it shall enter an order that the defendant is entitled to a new trial. *See Barnes*, 202 F.3d at 157 (noting that the usual course of action is to "remand to the district court with instructions either to re-conduct the *Batson* analysis or, if the district court determined that it was no longer possible to do so effectively, to order a new trial."); *Tankleff*, 135 F.3d at 250.

4

## CONCLUSION

For the reasons stated above, we **REMAND** the cause to the District Court under instructions to conduct a "reconstruction hearing," or, if it is no longer possible to do so effectively, to enter an order that the defendant is entitled to a new trial. *See Barnes v. Anderson*, 202 F.3d 150, 157 (2d Cir. 1999); *Tankleff v. Senkowski*, 135 F.3d 235, 250 (2d Cir. 1998).

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk