17-1541(L)
*United States v. Gigliotti*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 2nd day of March, two thousand twenty-one.

Present:
> DEBRA ANN LIVINGSTON,
> > *Chief Judge*,
> JOSÉ A. CABRANES,
> GERARD E. LYNCH,
> > *Circuit Judges*.

---

UNITED STATES OF AMERICA,

> *Appellee*,

> v.                                                          17-1541, 17-2166

ELEONORA GIGLIOTTI, FRANCO FAZIO

> *Defendants*,

> v.

GREGORIO GIGLIOTTI, ANGELO GIGLIOTTI,

> *Defendants-Appellants*.

---

For Appellee:                           KEITH D. EDELMAN, Jo Ann M. Navickas, Margaret E. Gandy, *for* Seth D. DuCharme, Acting United States Attorney, Eastern District of New York, Brooklyn, NY.

1

For Defendant-Appellant Gregorio:        SCOTT BRETTSCHNEIDER, Forest Hills, NY.

For Defendant-Appellants:        BRENDAN WHITE, White & White, New York, NY.


Appeal from a judgment of the United States District Court for the Eastern District of New York (Dearie, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Defendants-Appellants Angelo Gigliotti ("Angelo") and Gregorio Gigliotti ("Gregorio") (collectively, "Defendants-Appellants") appeal from their convictions in the United States District Court for the Eastern District of New York entered on June 27, 2017[1] and April 24, 2017,[2] respectively. Defendants-Appellants were each convicted of one count of conspiracy to import cocaine, 21 U.S.C. §§ 963, 960(b)(1)(B)(ii); two counts of importation of cocaine, 21 U.S.C. §§ 952(a), 960(b)(1)(B)(ii); one count of conspiracy to possess cocaine with intent to distribute, 21 U.S.C. §§ 846, 841(b)(1)(A)(ii)(II); and one count of attempted possession of cocaine, 21 U.S.C. §§ 846, 841(b)(1)(A)(ii)(II). Gregorio was also convicted of unlawful use and possession of firearms, 18 U.S.C. § 924(c)(1)(A)(i), and possession of a defaced firearm, 18 U.S.C. §§ 922(k), 924(a)(1)(B). We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

---

[1]    Angelo Gigliotti's final judgment was amended on July 19, 2017 and on December 15, 2017.

[2]    Gregorio Gigliotti's final judgment was amended on December 15, 2017.

2

**A.** *Batson* **Issue**

We review *de novo* a district court's determination that a criminal defendant's discriminatory use of gender-based peremptory challenges violated the Constitution. *United States v. Martinez*, 621 F.3d 101, 106 (2d Cir. 2010). In doing so, we afford "great deference" to the court's assessments of the credibility of an attorney's explanations for a peremptory challenge, *Davis v. Ayala*, 576 U.S. 257, 271 (2015) (internal quotation marks omitted), reviewing only for clear error, *Rice v. Collins*, 546 U.S. 333, 338 (2006). A district court's determination of whether a party has established a *prima facie* case under *Batson* is, moreover, subject to abuse of discretion review.[3] *Martinez*, 621 F.3d at 109; *Batson v. Kentucky*, 476 U.S. 79 (1986).

Defendants-Appellants contend that the district court erred in concluding that their use of peremptory challenges violated *Batson* because (1) the government's *Batson* objection was not timely; (2) the district court erroneously rejected the defense's facially neutral reasons for exercising the strikes; and (3) the district court reseated Juror No. 16 even though the government had not objected to defense counsel's justifications for striking this juror. We disagree.

First, we discern no error, much less an abuse of discretion, in the district court's determination to entertain the government's *Batson* objection while jury selection was still underway. *See Martinez*, 621 F.3d at 109-10. The government made its objection minutes after the end of the peremptory strikes and while the court was still in the process of screening potential alternate jurors. *See McCrory v. Henderson*, 82 F.3d 1243, 1249 (2d Cir. 1996); *United States v.*

---

[3] The district court employs a three-part burden-shifting framework when evaluating potential *Batson* violations. Under this framework, if a party objecting to a peremptory strike establishes a *prima facie* case of discrimination, the opposing party must then provide a neutral justification for its exercise of the strike. *See Martinez*, 621 F.3d at 108-09. At the third step, the trial court must determine whether the objecting party has met its ultimate burden to demonstrate that the peremptory challenge was the result of purposeful discrimination. *Id.* at 109.

*Biaggi*, 909 F.2d 662, 679 (2d Cir. 1990). The district court then instructed counsel to be prepared to offer reasons for striking the jurors at a hearing later the same day. This timing in no way prejudiced defense counsel, nor was defense counsel likely to have forgotten its reasons for exercising the peremptory strikes in the intervening period. *Cf. McCrory*, 82 F.3d at 1247. Moreover, because the struck jurors were still in the courthouse, had not yet been excused, and were able to report back to the court, a clear remedy was still available at the time of the government's objection.[4]

Second, the district court did not err in applying the three-part burden-shifting framework for evaluating *Batson* challenges. The district court found that the government had established a *prima facie* case of gender discrimination based on defense counsel's use of all ten of its peremptory strikes against men. The court then determined that defense counsel had offered non-discriminatory reasons for challenging each juror, except for Juror No. 16. In relation to this juror, defense counsel had suggested that it made the strike based on "gut" after "discussion with [the] client." We agree with the district court that this explanation was insufficient to rebut the *prima facie* showing of discriminatory intent in defense counsel's strike of Juror 16. *See Brown v. Kelly*, 973 F.2d 116, 121 (2d Cir. 1992) ("The fact that . . . explanations in the face of a *Batson* inquiry are founded on these impressions does not make them unacceptable if they are sufficiently specific

---

[4] We also reject Defendants-Appellants' unpreserved contention that it was error for the district court to consider the sufficiency of defense counsel's proffered basis for striking Juror 16 after the Government appeared to withdraw its objection to that strike. The Government initially objected to the strikes of all ten male jurors. Once the district court found a *prima facie* case of discrimination, which it properly did in this case, it had an independent obligation to conduct an inquiry and fashion a remedy if necessary. The district court is obliged to protect (and the Government cannot waive) the rights of prospective jurors not to be discriminated against. *See, e.g.*, *Georgia v. McCollum*, 505 U.S. 42, 49-50 (1992) ("Be it at the hands of the state or the defense, if a court allows jurors to be excluded because of group bias, it is a willing participant in a scheme that could only undermine the very foundation of our system of justice . . . ." (citation, internal quotation marks, and alterations omitted)).

to provide a basis upon which to evaluate their legitimacy."). At the third step of the burden-shifting framework, the district court further found defense counsel's explanations not credible with respect to the strike of Juror No. 3. Defense counsel had suggested that it challenged Juror No. 3 because this juror "went to verdict in Suffolk County," "had some law enforcement background," and had a "fairly pronounced Spanish accent." The district court found this reasoning unpersuasive because, *inter alia*, the record did not reflect that this juror had any law enforcement background, or that he had served on a criminal jury.[5] While Defendants-Appellants now point to record evidence that Juror No. 16 had an aunt in law enforcement, defense counsel did not raise this rationale before the district court, and there is no reason to believe that the district court failed to review the entire record.

Third, the district court did not abuse its discretion by reseating Juror Nos. 3 and 16 to remedy the *Batson* violation. At the third step of the burden-shifting framework, the district court was required to determine whether the government had established purposeful discrimination by considering "all relevant circumstances surrounding a defendant's *prima facie* showing of discrimination." *Jordan v. LeFevre*, 206 F.3d 196, 201 (2d Cir. 2000). After concluding that Jurors Nos. 3 and 16 had indeed been struck due to discrimination, the district court proceeded to fashion an appropriate remedy. *See Georgia v. McCollum*, 505 U.S. 42, 49 (1992) ("Regardless of who invokes the discriminatory challenge, there can be no doubt that the harm is the same—in all cases, the juror is subjected to open and public . . . discrimination."). The jury clerk called back all of the excused jurors and provided a neutral explanation, thereby avoiding any appearance of irregularity.

---

[5] The district court also noted that the defense did not strike two other male jurors who had served on criminal juries that reached a verdict, nor several females who had served on juries. *See Foster v. Chatman*, 136 S. Ct. 1737, 1750 (2016) (declining to credit certain explanations offered by counsel where counsel "willingly accepted" prospective jurors with the same traits).

5

Accordingly, we conclude that the district court did not clearly err in granting the government's *Batson* challenge and reseating Jurors Nos. 3 and 16.

### B. Administrative Search

Defendants-Appellants next argue that evidence obtained from a search of their restaurant should have been suppressed because law enforcement, in coordination with New York State Liquor Authority ("NYSLA"), carried out a pretextual administrative search of the restaurant prior to obtaining a search warrant. "On appeal from a district court's ruling on a motion to suppress evidence, we review legal conclusions de novo and findings of fact for clear error." *United States v. Purcell*, 967 F.3d 159, 178 (2d Cir. 2020) (internal quotation marks omitted).

The independent source doctrine "permits the admission of evidence seized pursuant to an unlawful search if that evidence would have been obtained through separate, lawful means." *United States v. Vilar*, 729 F.3d 62, 83 n.19 (2d Cir. 2013); *Segura v. United States*, 468 U.S. 796, 814 (1984). This doctrine applies where: (1) the warrant is supported by probable cause "derived from sources independent of the illegal entry;" and (2) the decision to seek the warrant was not "prompted by information gleaned from the illegal conduct." *United States v. Johnson*, 994 F.2d 980, 987 (2d Cir. 1993). When considering the second prong, the "relevant question is whether the warrant 'would have been sought even if what actually happened had not occurred.'" *Id.* (quoting *Murray v. United States*, 487 U.S. 533, 542 n.3 (1988)).

Here, assuming *arguendo* that the administrative search was improper, suppression of the evidence obtained from the restaurant search was not required because the search warrant later obtained by law enforcement was supported by independent sources, and the administrative search did not prompt the warrant application. As the district court concluded, the search warrant application relied on more than six months' worth of wiretaps carried out prior to the NYLSA

6

inspection. That investigation had revealed that Defendants-Appellants were importing cocaine, and that there was a fair probability that contraband or evidence of a crime would be found in the restaurant. Law enforcement had further seized 55 kilograms of cocaine from produce containers connected with one of Gregorio's produce import/export companies, suggesting that Gregorio used his businesses as a cover for his criminal operations.

Defendants-Appellants contend that the independent source doctrine cannot apply because the NYSLA search provided law enforcement with details about the layout of the restaurant. But the warrant application would not have lacked necessary particularity without this information. *See United States v. Clark*, 638 F.3d 89, 94 (2d Cir. 2011) (explaining that under the Fourth Amendment, a warrant application must "particularly describe[e] the place to be searched, and the persons or things to be seized" (internal quotation marks omitted)); *United States v. Ross*, 456 U.S. 798, 820-21 (1982) ("A lawful search of fixed premises generally extends to the entire area in which the object of the search may be found and is not limited by the possibility that separate acts of entry or opening may be required to complete the search." (footnote omitted)). Moreover, law enforcement already knew from the wiretaps and confidential informants that there was a computer and landline in the restaurant, and that these devices were likely located in the basement of the restaurant. Accordingly, the district court did not err in applying the independent source doctrine and denying Defendants-Appellants' motion to suppress.

### C. Foreign Evidence

"We review for abuse of discretion the district court's denial of a motion for a new trial." *United States v. Josephberg*, 562 F.3d 478, 488 (2d Cir. 2009). A district court "abuses" or "exceeds" its discretion when: "(1) its decision rests on an error of law (such as application of the wrong legal principle) or a clearly erroneous factual finding, or (2) its decision—though not

7

necessarily the product of a legal error or a clearly erroneous factual finding—cannot be located within the range of permissible decisions." *Zervos v. Verizon N.Y., Inc.*, 252 F.3d 163, 169 (2d Cir. 2001) (footnotes omitted). "In determining whether to grant a Rule 33 motion, the ultimate test is whether letting a guilty verdict stand would be a manifest injustice." *United States v. Walker*, 974 F.3d 193, 208 (2d Cir. 2020) (internal quotation marks and alteration omitted).

"[W]iretap evidence may be admissible when foreign officials, acting on their own to enforce foreign law, properly follow their own law in obtaining the evidence, even where the subject of the foreign search is an American citizen." *United States v. Maturo*, 982 F.2d 57, 60 (2d Cir. 1992) (citation omitted). In *Maturo*, this Circuit "recognized two circumstances where evidence obtained in a foreign jurisdiction may be excluded": (a) "where the conduct of foreign officials in acquiring the evidence is so extreme that [it] shock[s] the judicial conscience[,]" or (b) "where cooperation with foreign law enforcement officials may implicate constitutional restrictions." *Id.* at 60-61 (internal citation and quotation marks omitted). "Within the second category for excluding evidence, constitutional requirements may attach in two situations: (1) where the conduct of foreign law enforcement officials rendered them agents, or virtual agents, of United States law enforcement officials; or (2) where the cooperation between the United States and foreign law enforcement agencies is designed to evade constitutional requirements applicable to American officials." *Id.* at 61 (citation omitted).

Here, the district court did not abuse its discretion in rejecting Defendants-Appellants' motion for a new trial, which it construed as a motion to suppress evidence under Fed. R. Crim. P. 12(b)(3). The district court appropriately concluded that the documents provided to the court concerning the Italian legal proceedings did not demonstrate a violation under *Maturo*. As it reasoned, the documents did not suggest that the conduct of Italian law enforcement rendered those

officials "agents, or virtual agents" of U.S. law enforcement. *Id.* While Angelo argues that the

district court overlooked testimony provided by Inspector Giampietro Muroni, that testimony does

not call into question the independent nature of the Italian law enforcement effort. *See United*

*States v. Getto*, 729 F.3d 221, 231 (2d Cir. 2013) ("Defendant's allegations, even if credited,

demonstrate only robust information-sharing and cooperation across parallel investigations and do

not contradict the government's claim that the [foreign] investigation was not controlled or

directed by American law enforcement."); *United States v. Lee*, 723 F.3d 134, 141 (2d Cir. 2013)

(finding no *Maturo* violation despite the Drug Enforcement Administration and Jamaican

authorities having "agreed on several measures designed to facilitate collaboration and cooperation

in transnational drug investigations"). The district court therefore also did not abuse its discretion

by failing to hold a new suppression hearing. *United States v. Helmsley*, 985 F.2d 1202, 1209-10

(2d Cir. 1993) ("No hearing is required on a new trial motion if the moving papers themselves

disclosed the inadequacies of the defendants' case, and the opportunity to present live witnesses

would clearly have been unavailing." (internal alteration and quotation marks omitted)).[6]

### D. Sufficiency of the Evidence—18 U.S.C. § 924(c)

We review challenges to the sufficiency of the evidence *de novo*. *United States v. Harvey*,

746 F.3d 87, 89 (2d Cir. 2014). "A defendant seeking to overturn a jury verdict on sufficiency

grounds bears a heavy burden." *United States v. Anderson*, 747 F.3d 51, 59 (2d Cir. 2014) (internal

---

[6] We also reject Defendants-Appellants' related argument based on *Franks v. Delaware*, 438 U.S. 154 (1978). Under *Franks*, evidence obtained pursuant to a wiretap application containing erroneous information may be suppressed if the defendants show that: "(1) the claimed inaccuracies or omissions are the result of the affiant's deliberate falsehood or reckless disregard for the truth; and (2) the alleged falsehoods or omissions were necessary to the issuing judge's probable cause or necessity finding." *United States v. Rajaratnam*, 719 F.3d 139, 146 (2d Cir. 2013) (alterations and internal quotation marks omitted). Here, assuming *arguendo* that the government's search warrant application included any minor errors and omissions, there is no evidence to support the conclusion that such inaccuracies were deliberate or reckless, or that they were material to the wiretap application, which was supported by ample evidence.

quotation marks omitted). When assessing a sufficiency challenge, "[w]e must view the evidence in the light most favorable to the government, crediting every inference that could have been drawn in the government's favor, and deferring to the jury's assessment of witness credibility, and its assessment of the weight of the evidence." *United States v. Vargas-Cordon*, 733 F.3d 366, 375 (2d Cir. 2013) (internal quotation marks omitted). We will uphold the conviction if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Coplon*, 703 F.3d 46, 62 (2d Cir. 2012) (internal quotation marks omitted).

To convict under 18 U.S.C. § 924(c), the government must prove that the defendant knowingly possessed a firearm in furtherance of a drug trafficking crime. *See Untied States v. Finley*, 245 F.3d 199, 203 (2d Cir. 2001). Possession is considered "in furtherance of" a drug trafficking crime within the meaning of § 924(c) if there was "some nexus between the firearm and the drug [crime]." *Id.* While "the mere presence of a weapon at the scene of a drug crime, without more, is insufficient to prove that the gun was possessed 'in furtherance of' the drug crime," *United States v. Snow*, 462 F.3d 55, 62 (2d Cir. 2006) (internal quotation marks and emphasis omitted), this requirement is satisfied where the gun had "the potential of facilitating [a] drug trafficking offense," *Smith v. United States*, 508 U.S. 223, 238 (1993) (internal quotation marks and alterations omitted). Here, law enforcement recovered seven firearms and a large collection of ammunition from the basement of the restaurant. One witness, a former co-conspirator, testified to having seen Gregorio pull a gun out of a drawer in the restaurant basement, which served as the center of operations for Gregorio's drug import operation, commenting that he was in a difficult business and that "[y]ou need to protect the merchandise. You need this." That same witness also saw Gregorio with cocaine in the basement. Several of the firearms were found in safes also containing $100,000 cash, two holsters, illegal brass knuckles, and a ledger

10

documenting drug proceeds, and one of the firearms was small enough to fit in a pocket and had a defaced serial number. While Gregorio argues that the weapons could not have facilitated the drug scheme because they were locked away, this argument is unavailing. *See Finley*, 245 F.3d at 203 (finding possession where a defendant "knowingly [had] the power and the intention at a given time to exercise dominion and control over an object" (internal quotation marks omitted)); *United States v. Lewter*, 402 F.3d 319, 322 (2d Cir. 2005) ("Possession of a firearm to defend a drug stash clearly furthers the crime of possession with intent to distribute the contents of that stash."). A rational jury could have found a "nexus between the firearm[s] and the drug [crimes]." *Finley*, 245 F.3d at 203. Accordingly, we reject Gregorio's sufficiency challenge and affirm his conviction under 18 U.S.C. § 924(c).

### E. Retention of a Juror

Lastly, Defendants-Appellants argue that the district court abused its discretion in declining to dismiss Juror No. 3, who had informed the court that she needed to leave for a wedding by a specific time. "Whether in the circumstances 'just cause' exists to excuse a juror is a matter within the discretion of the district court." *United States v. Ruggiero*, 928 F.2d 1289, 1300 (2d Cir. 1991) (internal quotation marks omitted).

In this case, the district court decided not to dismiss the juror but instead called in the jury and instructed it that it was not to rush and that, if necessary, arrangements would be made to prevent Juror No. 3 from missing her scheduled event. In total, the jury deliberated for approximately one full day and acquitted Angelo on two counts. There is no evidence to suggest that the jury was rushed, and no juror raised any concern about what the jury was to do in the event that it could not complete deliberations before Juror No. 3's departure. *See United States v. Herrera*, 704 F.3d 480, 489 (7th Cir. 2013). Defense counsel also did not object to the district

11

court's course of action, despite consulting with the court about the issue. Accordingly, the district court did not abuse its discretion in declining to dismiss Juror No. 3.

*     *     *

We have considered Defendants-Appellants' remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk